**DENNIS JOSLIN COMPANY, LLC, Plaintiff,**

v.

**ROBINSON BROADCASTING CORPORATION, et al., Defendants.**

**Civil Action No. 97–0986 (PLF).**

United States District Court, District of Columbia.

Sept. 22, 1997.

**492**

Bravitt C. Manley, Jr., Washington, DC, for Dennis Joslin Co., LLC.

Stanley M. Brand, Brand Lowell & Ryan, Washington, DC, for Edward Saunders.

Philip Lee Kellogg, Kellogg Williams & Lyons, Washington, DC, for Barrington B. Barnes, Jacqueline Barnes.

Steven Harold Greenfeld, Gins & Greenfeld, PC, Washington, DC, for Nancy Freeman.

Marcia Kaplan Docter, Docter, Docter & Lynn, PC, Washington, DC, for Alvin F. Robinson.

## MEMORANDUM OPINION AND ORDER

PAUL L. FRIEDMAN, District Judge.

This matter is before the Court on defendants' motion to dismiss plaintiff's complaint for failure to state a claim upon which relief can be granted under Rule 12(b)(6) of the Federal Rules of Civil Procedure. Plaintiff opposes the motion. The matter was argued before the Court on September 9, 1997. Upon consideration of the parties' briefs and arguments, the Court concludes that the District of Columbia version of the Uniform Commercial Code prevents enforcement of the note against defendant Robinson Broadcasting Corporation, but all other defendants have waived the defense. The motion to dismiss of Robinson Broadcasting Corporation therefore is granted. The motion of all other defendants must be denied.

## I. BACKGROUND

This is a case about an unpaid note. Plaintiff, the current holder of the note, claims that defendants owe a principal sum of $558,-938.07, interest of $489,474.66 through May 1, 1997 (with interest accruing at $156.96 a day), and attorneys' fees and court costs. Subtracted from that amount is $39,050.10 in payments that plaintiff concedes having received.

In 1985, defendant Robinson Broadcasting Corporation executed the note in exchange for a loan by the Madison National Bank. At the same time, the remaining defendants ("Guarantor Defendants") executed an unconditional loan guarantee of payment for the note to Madison. The Federal Deposit Insurance Corporation acquired the note when it became receiver for Madison in 1991. The FDIC subsequently sold the note to 4M Communications. In March 1997, FDIC issued an affidavit of lost note to 4M Communications indicating that it had lost the original note. Approximately two months later, 4M Communications sold its interest in the note, via an assignment of promissory note, to the Joslin Company. The Joslin Company is now suing to recover the money owed on the note.[1]

Defendants Barrington Barnes and Jacqueline Barnes filed a joint motion to dismiss. Robinson Broadcasting, Nancy Freeman, Alvin Robinson and Edward Saunders

---

1. This same note was the subject of litigation in this Court four years ago, when the borrowers on the note sought injunctive relief against the FDIC. *See Freeman v. Federal Deposit Insurance Corp.*, 842 F.Supp. 2 (D.D.C.1993), *affirmed*, 56 F.3d 1394 (D.C.Cir.1995).

joined in that motion. A "Suggestion of Death" has been filed with respect to Charles F. Adams, and plaintiff's counsel received a letter indicating that Jacqueline Robinson is also now deceased. All of the defendants except Robinson Broadcasting are guarantors on Robinson's note.

## II. DISCUSSION

Defendants argue that plaintiff is precluded by statute from suing on this note because the note has been lost and because the note was not in plaintiff's possession at the time the note was lost. *See* D.C.Code § 28:3–309 (1996). In response, plaintiff argues: (1) that 12 U.S.C. § 1821(j) prevents this Court from reaching the merits of this defense; (2) that the Guarantor Defendants have waived the statutory UCC defense by signing the Loan Guarantee agreement; and (3) that even if there were no waiver, the UCC defense is unavailable to the Guarantor Defendants.

### A. Preemption of Defense by 12 U.S.C. § 1821(j)

■ The Court first addresses plaintiff's contention, raised at oral argument, that 12 U.S.C. § 1821(j) prevents defendants from invoking a defense based on the District of Columbia version of the Uniform Commercial Code, D.C.Code § 28:3–309. The bar imposed by 12 U.S.C. § 1821(j) is jurisdictional and it therefore must be considered prior to a consideration of the statutory defense. *See National Trust for Historic Preservation v. FDIC*, 21 F.3d 469, 471 (D.C.Cir.), *cert. denied*, 513 U.S. 1065, 115 S.Ct. 683, 130 L.Ed.2d 615 (1994).

Congress has decreed that no court may "take any action, except at the request of the Board of Directors [of the FDIC] by regulation or order, to restrain or affect the exercise of powers or functions of the [Federal Deposit Insurance] Corporation as a conservator or a receiver." 12 U.S.C. § 1821(j) (1989). Our Court of Appeals has held that this provision, in conjunction with 12 U.S.C. § 1821(d)(13)(D), prevents the Court from exercising jurisdiction over actions for injunctive relief brought against the FDIC in its capacity as receiver or conservator; i.e. it is intended to protect the functions of the FDIC from judicial interference.[2] *See Freeman v. FDIC*, 56 F.3d 1394, 1398–99 (D.C.Cir.1995); *National Trust for Historic Preservation v. FDIC*, 995 F.2d 238, 240 (D.C.Cir.1993), *vacated*, 5 F.3d 567 (D.C.Cir. 1993), *reinstated*, 21 F.3d 469 (D.C.Cir.1994), *cert. denied*, 513 U.S. 1065, 115 S.Ct. 683, 130 L.Ed.2d 615 (1994). Plaintiff argues that the jurisdictional bar imposed by 12 U.S.C. § 1821(j) also precludes this Court from recognizing defenses to enforcement of a note such as those raised by the defendants, because recognizing such defenses would impair the FDIC's ability to sell notes that it holds as receiver of failed banks.

■ The Court finds that 12 U.S.C. § 1821(j) is inapplicable to this case. First, while Section 1821(j) has been read broadly, and some courts have recognized that a suit against an entity other than the FDIC as conservator or receiver may nonetheless impair the FDIC's functions, *see Pyramid Construction Co., Inc. v. Wind River Petroleum, Inc.*, 866 F.Supp. 513, 518 (D.Utah 1994), the limitation imposed by 12 U.S.C. § 1821(j) is intended to protect the FDIC's powers and functions as conservator or receiver. It does not follow that these protections attach for all time to a note once held by the FDIC. Plaintiff in this case has not shown that the FDIC's functions will be impaired in any way if this Court recognizes a defense to the note. Section 1821(j) therefore does not deprive this Court of jurisdiction to consider the UCC defense.

Second, while 12 U.S.C. § 1821(j) precludes other individuals or entities from bringing suit against the FDIC as conservator or receiver, it is not at all clear that the provision was intended to prevent defendants from raising affirmative defenses to suits brought by the FDIC or those purporting to stand in its shoes. *See Tri–State Hotels, Inc. v. F.D.I.C.*, 79 F.3d 707, 715 (8th Cir.1996) (fact that court does not have jurisdiction to

---

**2.** 12 U.S.C. § 1821(d)(13)(D) deprives courts of jurisdiction over "any claim or action for payment from ... any depository institution for

which the [FDIC] has been appointed receiver ..."

order declaratory and rescissory relief against FDIC does not leave plaintiff defenseless if FDIC brings action against plaintiff to enforce loan agreement, because court would have jurisdiction to hear affirmative defenses); *cf. Resolution Trust Corp. v. Midwest Federal Savings Bank*, 36 F.3d 785, 793 (9th Cir.1993) (12 U.S.C. § 1821(d)(1)(D), a similar jurisdiction-stripping provision, "does not divest a district court of jurisdiction over affirmative defenses"). Having found that there is no jurisdictional bar to the UCC defense raised by defendants, the Court now turns to the merits of that defense.

### B. The UCC Defense

■ D.C.Code § 28:3-309 provides that: (a) A person not in possession of an instrument is entitled to enforce the instrument if (i) the person was in possession of the instrument and entitled to enforce it when the loss of possession occurred, (ii) the loss of possession was not the result of a transfer by the person or a lawful seizure, and (iii) the person cannot reasonably obtain possession of the instrument because the instrument was destroyed, its whereabouts cannot be determined, or it is in the wrongful possession of an unknown person or a person that cannot be found or is not amenable to service of process.[3]

This provision was adopted in 1995 when the District of Columbia adopted revised Article 3 of the Uniform Commercial Code. Prior to the adoption of revised Article 3, the section of the statute governing lost instruments provided that "the owner of an instrument which is lost, whether by theft or otherwise, may maintain an action in his own name, and recover from any party liable thereon upon due proof of his ownership, the facts which prevent his production of the instrument and its terms." D.C.Code § 28:3-804 (1973) (superseded 1995); UCC § 3-804 (superseded 1991).

■ Plaintiff is not now in possession of the note. Nor was plaintiff "in possession of the instrument and entitled to enforce it when the loss of possession occurred." *See* D.C.Code § 28:3-309; UCC § 3-309. Indeed, plaintiff in this case never had actual possession of the note, and plaintiff concedes that the note was lost while the FDIC—not plaintiff—was in possession. *See* Affidavit and Assignment of Lost Note of FDIC at ¶ 7. At oral argument, defendants conceded that under the old UCC provision defendants would not have been able to invoke the lost note defense if plaintiff could prove it now owned the note and the facts preventing its production of the note. The issue therefore is whether the 1995 revision to Article 3 makes the UCC defense available to defendants.

The revised provision has not yet been applied in the District of Columbia. Nor is there any reported decision in any jurisdiction interpreting this provision of revised Article 3 of the UCC. The commentaries to both the original provision (UCC § 3-804) and the revised provision (UCC § 3-309) indicate that both provisions are intended to protect defendants from being obligated to two persons or entities with conflicting claims—the original holder who lost the instrument and a subsequent holder who innocently acquired the lost note. UCC § 3-309 official comment (1991); UCC § 3-804 official comment. It is not clear from the lan-

---

**3.** The Court concludes that District of Columbia law applies in this case. In a diversity action, this Court must apply the choice of law principles of the District of Columbia. *See Bledsoe v. Crowley*, 849 F.2d 639, 641 (D.C.Cir.1988). The note in this case specifies that "payments pursuant to this note shall be made at Madison National Bank, 1730 M Street, N.W., Washington D.C. 20036, or any other location designated by the holder." Deed of Trust Note. District of Columbia law is therefore most appropriate. *See Restatement (Second) of Conflicts of Law* § 195 ("validity of a contract for the repayment of money lent and the rights created thereby are determined ... by the local law of the state

where the contract requires that repayment be made").

In addition, the District has the most substantial connection to the contract at issue here: all negotiations of the contract and payments took place in the District, all parties to the note were District entities, and the only connection to any other state is that the security for the loan was located in Virginia. *See Koro Co. Inc. v. Bristol-Myers Co.*, 568 F.Supp. 280, 286 (D.D.C.1983); *Nelson v. Nationwide Mortgage Corp., et al.*, 659 F.Supp. 611, 616 (D.D.C.1987) ("[t]he fact that the property securing the loan is located in the District of Columbia is irrelevant when, as here, the claim is based on the validity of the debt").

guage of the revised provision or from the commentary, however, why the language of the provision was changed from the seemingly clearer language of the earlier provision that permitted the owner of a lost instrument to recover on the lost instrument if it could prove ownership and the facts that prevent its production of the instrument. The commentary to the revised provision states only that "the rights stated [in the revised provision] are those of a 'person entitled to enforce the instrument' at the time of the loss rather than of an 'owner' as in former Section 3–804." UCC § 3–309 official comment (1991).

The drafters of the revised provision may have intended only to draw a distinction based on the enforcement rights of the person in possession at the time the note was lost. If this was the intent, then in order for any person to enforce rights based on a lost note, the person in possession at the time the note was lost must have been *entitled to enforce the instrument.*" If the person in possession of the note at the time it was lost was merely an owner and not entitled to enforce the instrument, then the UCC provision would bar enforcement of the lost note. This reading of the provision is consistent with the commentary to the revised provision, and it also seems consistent with the purpose of protecting the defendant from a person without legitimate claim to enforcement. If the drafters intended only to draw this distinction based on the rights that existed at the time the note was lost, then the FDIC could assign to plaintiff any enforcement rights that it possessed at the time the note was lost to plaintiff, and plaintiff would not be required to show that plaintiff was in possession at the time the note was lost.

The difficulty with this interpretation of the provision is that the language of the revised provision clearly states that the person suing on a lost note is entitled to enforce the note only if that person "was in possession of the instrument *when loss of possession occurred.*" UCC § 3–309 (emphasis

added). While there does not appear to be a logical reason to distinguish between a person who was in possession at the time of the loss and one who later comes into possession of the rights to the note, the plain language of the provision mandates that the plaintiff suing on the note must meet two tests, not just one: it must have been *both* in possession of the note when it was lost and entitled to enforce the note when it was lost. *See Saadeh v. Farouki,* 107 F.3d 52, 57 (D.C.Cir. 1997) (if language of statute is plain on its face, it is not ordinarily necessary to resort to legislative history). Since plaintiff did not have possession of the note at the time it was lost it appears that the new provision, if applicable, precludes recovery.

### C. Waiver of the UCC Defense

 Plaintiff argues that the Guarantor Defendants waived the UCC defense when they signed the Loan Guarantee.[4] Under the terms of the Loan Guarantee, the Guarantor Defendants agreed that:

> No invalidity, irregularity or unenforceability of any Obligation guaranteed hereunder, or any part thereof, shall affect, impair or be a defense to performance of the obligation of any Guarantor under this guarantee.

Complaint, Exhibit C–1 at ¶ 8. The express terms of the Loan Guarantee indicate that defendants waived any defense which goes to the unenforceability of any obligation guaranteed, and the UCC defense is such a defense. The Guarantor Defendants' argument that they could not have waived the UCC defense because the provision had not yet been enacted at the time that defendants executed the waiver is unavailing. The waiver by its terms is not limited to defenses existing at the time the agreement was signed. The waiver therefore is valid, and the Guarantor Defendants have waived this defense.[5]

While the Guarantor Defendants waived the UCC defense by signing the Loan Guarantee, the Deed of Trust Note signed by

---

**4.** All of the Guarantor Defendants are being sued on the Loan Guarantee contract. Robinson Broadcasting is being sued on the note itself.

**5.** Waiver provisions in loan guarantee contracts such as this one are honored in the District of Columbia. *See, Opton, Inc. v. Federal Deposit Insurance Corp.,* 647 A.2d 1126, 1133 n. 6 (D.C. 1994).

defendant Robinson Broadcasting Corporation does not contain a waiver provision. Defendant Robinson Broadcasting Corporation therefore is entitled to invoke the UCC defense to prevent plaintiff from enforcing the note against it.

For the foregoing reasons, it is hereby

ORDERED that defendants' motion to dismiss is DENIED as to defendants Barrington Barnes, Jacqueline Barnes, Nancy Freeman, Alvin Robinson and Edward Saunders; and it is

FURTHER ORDERED that defendants' motion to dismiss is GRANTED as to defendant Robinson Broadcasting Corporation.

SO ORDERED.