Hillsborough-southern judicial district
No. 97-027

WILLIAM C. BARNSLEY

v.

EMPIRE MORTGAGE LIMITED PARTNERSHIP V

March 31, 1998

*William E. Aivalikles*, of Nashua, by brief and orally, for the plaintiff.

*Law Offices of John L. Allen & Associates, P.C.* of Manchester (*Richard M. Husband* on the brief and orally), for the defendant.

HORTON, J. The plaintiff, William C. Barnsley, appeals the Superior Court's (*Hollman*, J.) grant of summary judgment in favor of the defendant, Empire Mortgage Limited Partnership V. We reverse and remand.

On November 8, 1988, the plaintiff executed a commercial real estate promissory note and mortgage for $180,000 with the Hillsborough Bank and Trust Company (bank), secured by four building lots located in Temple and one lot located in New Ipswich. The note provided for monthly interest payments "at a rate equal to the base lending rate of Hillsborough Bank & Trust Company, Inc., plus Four (4.0%) percent, adjusted daily."

The bank foreclosed on three lots by June 1991. In August 1991, the plaintiff learned of foreclosure proceedings scheduled for September 1991 on the last two lots, which were subsequently cancelled. Around August 30, 1991, the Federal Deposit Insurance Corporation (FDIC) assumed the obligations of the then-failed bank and distributed many of the bank's assets, not including the subject note, to Peterborough Savings Bank. On June 25, 1995, the FDIC, as receiver for the bank, assigned the Barnsley mortgage to the defendant.

In 1996, the defendant notified the plaintiff of plans to foreclose the mortgage on the last two lots on May 23, alleging an outstanding balance due on the $180,000 promissory note. In May 1996, the

plaintiff filed an *ex parte* bill in equity to enjoin the foreclosure proceedings. The plaintiff alleges that through the foreclosure sales, and pursuant to an agreement dated August 10, 1988, the promissory note has been paid. The plaintiff has not provided a copy of this agreement to this court on appeal. *See* SUP. CT. R. 13(3). The defendant alleges that after the bank paid the plaintiff's other debts, no funds were available to satisfy the mortgage. The defendant also contends that the plaintiff offered no evidence to the contrary. Finding the note to be negotiable, and the defendant to be a holder in due course, the trial court did not consider the merits of Barnsley's arguments. The defendant moved for summary judgment. After a hearing, the superior court granted the plaintiff's request for a preliminary injunction to enjoin the foreclosure proceedings. In November 1996, however, the court granted the defendant's motion for summary judgment. The plaintiff appeals.

On appeal, the plaintiff argues: (1) because the note includes a variable interest rate, it is not for a sum certain and is therefore non-negotiable; (2) because the note is non-negotiable, the defendant is not a holder in due course and is therefore a holder subject to the plaintiff's defense of payment; and (3) the mortgage deed was void since the plaintiff had paid the note in full.

"When reviewing a motion for summary judgment, the court must consider the evidence in the light most favorable to the party opposing the motion and take all reasonable inferences from the evidence in that party's favor." *High Country Assocs. v. New Hampshire Ins. Co.*, 139 N.H. 39, 41, 648 A.2d 474, 476 (1994) (citation omitted). We find that the trial court erred as a matter of law in granting summary judgment to the defendant.

█ Although the defendant and the trial court considered recent amendments to the Uniform Commercial Code (UCC), *see* RSA 382-A:3-101 *et seq.* (1994), we apply only the 1961 version of the UCC since it governed negotiable instruments at the time of the execution of the promissory note in question. *See* N.H. CONST. pt. I, art. 23.

To be negotiable, a note must be for a "sum certain." Former RSA 382-A:3-106(1) (1961) (amended and recodified 1994) provided:

> The sum payable is a sum certain even though it is to be paid
>
> (a) with stated interest or by stated installments; or
>
> (b) with stated different rates of interest before and after default or a specified date; or

(c) with a stated discount or addition if paid before or after the date fixed for payment; or

(d) with exchange or less exchange, whether at a fixed rate or at the current rate; or

(e) with costs of collection or an attorney's fee or both upon default.

Official Comment 1 further provided:

It is sufficient that at any time of payment the holder is able to determine the amount then payable from the instrument itself with any necessary computation. . . . The computation must be one which can be made from the instrument itself without reference to any outside source, and this section does not make negotiable a note payable with interest "at the current rate."

Former RSA 382-A:3-106 Official Comment 1.

The negotiability of a variable interest rate note under the 1961 UCC is a question of first impression. Since a primary purpose of the UCC is "to make uniform the law among the various jurisdictions," RSA 382-A:1-102(1)(c) (1961), we look to other jurisdictions for guidance. Courts grappling with the negotiability of variable interest rate notes have been divided. *See* 5A R. ANDERSON, UNIFORM COMMERCIAL CODE § 3-106:9, at 204 (3d ed. 1994); *see generally* Annotation, *Negotiability of Instruments Providing for Variable Rate of Interest Under UCC § 3-106*, 69 A.L.R. 4TH 1127 (1989). Some courts found notes containing variable interest rates to be for a sum certain and, therefore, negotiable. *See* 5A ANDERSON, *supra* § 3-106:9, at 204. Others, however, strictly rejected any variable rate that could not be calculated from the four corners of the document. *See id.* § 3-106:10, at 206.

We adopt the view established in *Centerre Bank of Branson v. Campbell*, 744 S.W.2d 490 (Mo. Ct. App. 1988). In *Campbell*, the interest rate in the note could vary based on the bank rate charged to the maker. *Id.* at 492. The note provided that "[i]nterest may vary with bank rates charged to Strand Investment Company." *Id.* In deciding that the note was not negotiable, the *Campbell* court reasoned that the "holder of the note would have to investigate [the interest charges] before determining the amount due on the note at any time of payment." *Id.* at 498.

■ In the present case, the note establishes the rate based on the "base lending rate" of the bank. To determine interest due on the note, the holder must inquire to identify the "base rate." Thus,

as drafted, this note does not contain all instructions necessary for the holder to identify the actual variable rate. To determine the amount due on the note at any given time, the holder must ask the bank its "base lending rate." We hold that under former RSA 382-A:3-106, when the note includes a variable interest rate which cannot be ascertained through a formula contained within the document, the note is not for a sum certain. We decline to decide whether a variable rate of interest tied to objectively ascertainable and widely disseminated rates (*e.g.*, prime rate, federal funds discount rate, London Interbank Offer Rate, etc.) prevent notes under the 1961 UCC from being negotiable. *Compare Klehm v. Grecian Chalet, Ltd.*, 518 N.E.2d 187, 192 (Ill. App. Ct. 1987) *with Taylor v. Roeder*, 360 S.E.2d 191, 194 (Va. 1987). Subsequent legislative enactment further persuades us that notes under the former UCC are not negotiable. Under the revised Article 3, adopted in 1994, instruments with variable interest rates are specifically made negotiable. RSA 382-A:3-104(a), :3-112(b) (1994); *see Cowan v. Tyrolean Ski Area, Inc.*, 127 N.H. 397, 403, 506 A.2d 690, 694 (1985).

■ The plaintiff next argues that the defendant is not a holder in due course. We agree. Because the note was not for a sum certain, the note cannot be a negotiable instrument. RSA 382-A:3-106 (1961) (amended and recodified 1994). Because the plaintiff's note was not negotiable, the FDIC could not become a holder in due course. When the FDIC takes over a failed savings institution, "[t]he [FDIC] shall, as conservator or receiver, and by operation of law, succeed to . . . all rights, titles, powers, and privileges of the insured depository institution . . . ." 12 U.S.C. § 1821(d)(2)(A)(i) (1994). Further, the FDIC's rights to the bank's assets are provided for under state law, and are not supplemented by federal law. *See O'Melveny & Meyers v. FDIC*, 512 U.S. 79, 86 (1994). Consequently, as we explained, the FDIC could only be a holder, subject to the claims and defenses of the payee. *See* RSA 382-A:3-306 (1961) (amended and recodified 1994). Regardless of how the defendant acquired the note from the FDIC, it is subject to the plaintiff's claims and defenses.

■ Finding that the defendant was a holder in due course, the trial court did not consider evidence on the plaintiff's claim of payment. We reverse and remand to determine whether the plaintiff satisfied the note through the alleged payments and application of foreclosure proceeds. *See* RSA 479:6 (1992); RSA 382-A:3-603(1) (1961) (amended and recodified 1994). The UCC and foreclosure law

both consider payments as a discharge of liability, and thus, their respective provisions are not in conflict. We need not decide which statute controls the foreclosure. Under the UCC and our mortgage law, liability on the note and mortgage has been satisfied to the extent that any payment has been made. On remand, the plaintiff may assert any defenses against the defendant's demand for payment and for foreclosure. *See* 4 R. POWELL & P. ROHAN, POWELL ON REAL PROPERTY § 37.33, at 37-226 to 37-239 (1997).

*Reversed and remanded.*

All concurred.