Hillsborough-northern judicial district
No. 98-077

## YYY CORPORATION

v.

## RICHARD AND EVERETTE GAZDA

April 7, 2000

*Beliveau & Fradette, P.A.*, of Manchester (*Clifford P. Gallant, Jr.* on the brief and orally), for the plaintiff.

*Boynton, Waldron, Doleac, Woodman & Scott, P.A.*, of Portsmouth (*Charles B. Doleac* and *Benjamin T. King* on the brief, and *Mr. King* orally), for the defendants.

*Kathleen V. Gunning*, of Washington, D.C., and *T. David Plourde*, assistant United States Attorney, of Concord, for the Federal Deposit Insurance Corporation, as *amicus curiae*.

BROCK, C.J. The defendants, Richard and Everette Gazda, appeal the Superior Court's (*Lynn*, J.) grant of summary judgment in favor of the plaintiff, YYY Corporation, enforcing an obligation under a promissory note dated August 22, 1985. The plaintiff cross-appeals from the trial court's ruling barring it from enforcing a second promissory note dated April 1, 1987, against the defendants. We affirm in part, reverse in part, and remand.

This case arises out of the plaintiff's efforts to collect monies owed by the defendants under two separate obligations. First, on August 22, 1985, Craig Krisel and William Volante executed a promissory note (August 22 note) in the amount of $1,360,000 to United Federal Bank that was secured by a first mortgage on two apartment buildings in Rochester. On June 13, 1986, Krisel and Volante deeded the apartment buildings to the defendants. Under the deed, the defendants agreed to assume the mortgage and the August 22 note in the amount of $1,344,547.45. In connection with this acquisition, on April 1, 1987, the defendants executed a reform agreement with United Savings Bank, the successor in interest to United Federal Bank, which stated:

### REFORM AGREEMENT

This agreement made and entered into by and between Richard S. Gazda and Everette C. Gazda, hereafter called "Borrower"; United Savings Bank, hereafter called "Bank" and Craig Krisel and William Volante "Mortgagor":

Witness that:

WHEREAS, the Bank loaned to mortgagor the sum of $1,360,000.00 on August 22, 1985, secured by a mortgage repayable at the rate of $13,823.98 per month, bearing an interest at the rate of 11.50 percent per annum; and assumed at $1,352,605.22 by a deed dated June 13, 1986; and

WHEREAS, by mutual agreement Borrower and Bank wish to revise the terms of payment of the note signed by Mortgagor, upon compliance with the following terms; and

WHEREAS, Borrower desires a definite schedule of payments to repay the balance of said loan amounting to $1,344,547.45;

NOW IT IS HEREBY AGREED THAT;

(1) Commencing March 1, 1987; the rate of interest on the unpaid balance shall be 10.00 percent per annum.

(2) Commencing April 1, 1987; and continuing monthly therafter [sic], the Borrower agrees to make and the Bank agrees to accept principal and interest payments in the amount of $12,217.91.

(3) The Borrower and the Mortgagor respectively agree that on March 1, 2012 the entire balance due under the terms of said mortgage and note shall be due and payable at the option of the Bank.

This agreement shall not otherwise waive any of the terms of the original note and mortgage heretofore signed by the Mortgagor.

Witness our hands this 1st day of April, 1987.

/s/
(Borrower)-Richard S. Gazda
/s/
(Borrower)-Everette C. Gazda

Second, also on April 1, the defendants executed a promissory note in the amount of $369,202.53 (April 1 note) with United Savings Bank. This note was secured by a second mortgage on the Rochester apartment buildings.

Both original notes were held by United Savings Bank. In January 1991, the defendants stopped making payments on the notes. On September 25, 1991, Dartmouth Bank, successor to United Savings Bank, foreclosed its mortgage interest in the apartment buildings, leaving a total deficiency of $1,642,668 on both notes. In October 1991, the Federal Deposit Insurance Corporation (FDIC) was appointed receiver of the then-failed Dartmouth Bank.

The plaintiff purchased both notes from the FDIC under a Loan Sale Agreement dated May 17, 1996. Under this agreement, the FDIC assigned to the plaintiff whatever right, title, and interest it had in the notes and the reform agreement. Along with the Loan Sale Agreement, Joseph P. Conway, Jr., Vice President of Banc One New Hampshire Asset Management Corporation, the servicer of the FDIC, executed two Affidavits of Lost Originals stating that the FDIC's records had been "diligently searched" and that the original August 22 and April 1 notes could not be located. It is undisputed

that the plaintiff never received the original notes, but only copies of the notes from the FDIC. Neither party presented evidence as to when the original notes were lost.

The plaintiff initiated this action to collect the deficiency balance owed by the defendants. After the defendants filed affirmative defenses, the plaintiff moved for summary judgment. *See* RSA 491:8-a (1997). In August 1997, the defendants filed a motion requesting that the plaintiff produce several documents relating to the purchase price paid to the FDIC for the notes. The trial court granted the motion to produce on a limited basis, requiring that any individualized valuation by the plaintiff of the purchase price of the notes be disclosed. On December 8, 1997, the trial court granted the plaintiff's motion for summary judgment.

Subsequently, the plaintiff sought permission to file copies of the notes in place of the lost originals. *See* SUPER. CT. R. 77 (requiring that evidence of indebtedness be filed with clerk of court). The trial court then vacated its order granting summary judgment to further consider "whether the plaintiff is authorized to enforce the promissory notes and/or the underlying obligations at issue when plaintiff was never in possession of the original promissory notes."

On June 7, 1998, the trial court reinstated summary judgment with respect to the August 22 obligation, ruling that the plaintiff was entitled to enforce it under the reform agreement because that document was not a negotiable instrument and thus not governed by Article 3 of the Uniform Commercial Code (UCC). However, the trial court ruled that the plaintiff could not enforce the April 1 note because, as a negotiable instrument, it was subject to RSA 382-A:3-309 (1994).

On appeal, the defendants argue that the trial court erred in: (1) granting summary judgment and ruling that the plaintiff could enforce the August 22 obligation under the reform agreement; (2) granting summary judgment on the reform agreement without compelling the plaintiff to produce all documents concerning the plaintiff's purchase of the notes; and (3) ruling that the defendants had no basis to allege violation of the covenant of good faith and fair dealing by the plaintiff and the FDIC. On cross-appeal, the plaintiff argues that the trial court erred in ruling that RSA 382-A:3-309(a) bars enforcement of the April 1 note. We review the trial court's ruling to determine whether the trial court erred as a matter of law. *See Barnsley v. Empire Mortgage Ltd. Partnership V*, 142 N.H. 721, 723, 720 A.2d 63, 64 (1998).

*I. August 22 Note and Reform Agreement*

In considering the defendants' liability on the reform agreement, "we apply only the 1961 version of the UCC since it governed negotiable instruments at the time of the execution of the [document] in question." *Id.* at 723, 720 A.2d at 64.

The defendants contend that the trial court erred in ruling that the reform agreement was not a negotiable instrument and that the plaintiff could enforce it without ever having possessed the original August 22 note. Further, they argue that the trial court erred in ruling that their liability arose from the reform agreement and not from their assumption of the mortgage. They argue that they can be liable only on the original, lost note, and that the plaintiff cannot meet the requirements of RSA 382-A:3-309, which controls when a party can enforce a lost, destroyed, or stolen negotiable instrument.

RSA 382-A:3-104 (1961) provides in pertinent part:

(1) Any writing to be a negotiable instrument within this Article must

(a) be signed by the maker or drawer; and
(b) contain an unconditional promise or order to pay a sum certain in money and no other promise, order, obligation or power given by the maker or drawer except as authorized by this Article; and
(c) be payable on demand or at a definite time; and
(d) be payable to order or bearer.

We agree with the trial court that the reform agreement is not a negotiable instrument as it fails to meet two of these requirements.

First, the reform agreement does not contain an "unconditional promise" to pay. RSA 382-A:3-104(1)(b). RSA 382-A:3-105(2)(a) (1961) clarifies the unconditional promise requirement and states, in part, that "[a] promise or order is not unconditional if the instrument . . . states that it is subject to or governed by any other agreement." "The intent of the provision is that an instrument is not negotiable unless the holder can ascertain all of its essential terms from its face." RSA 382-A:3-105 comment 8.

The reform agreement states that it does not waive "any of the terms of the original note and mortgage." The original note contains additional terms, such as late charges, events of default, and right to prepayment, which are absent from the reform agreement and cannot be determined without reviewing the original note. Therefore, the reform agreement does not contain an unconditional

promise because not all of the essential terms can be ascertained from its face. *Cf. Barnsley*, 142 N.H. at 725, 720 A.2d at 65.

■ Second, the reform agreement does not contain any language making it payable "to order or to bearer." RSA 382-A:3-104(1)(d). Although those exact words need not appear, a "clear equivalent" must be found and "in doubtful cases the decision should be against negotiability." RSA 382-A:3-104 comment 5. Here, the reform agreement contains no such language. Accordingly, the trial court did not err in finding that the reform agreement is not a negotiable instrument, and thus Article 3 of the UCC does not apply.

The defendants next contend that their liability for the $1,344,547.45 obligation in the August 22 note arose not from the reform agreement, but as a matter of law when they accepted the deed. Thus, they can only be liable on the original August 22 note. They conclude that therefore the plaintiff cannot enforce the obligation because it never possessed the original note and cannot meet the requirements of RSA 382-A:3-309.

■ In support of this argument, the defendants cite decisions from other jurisdictions. *See Strosberg v. Brauvin Realty Service*, 691 N.E.2d 834 (Ill. App. Ct. 1998); *Geiselman v. Cramer Financial Group, Inc.*, 965 S.W.2d 532 (Tex. Ct. App. 1997); *Dennis Joslin Co. v. Robinson Broadcasting Corp.*, 977 F. Supp. 491 (D.D.C. 1997); *Burns v. Resolution Trust Corp.*, 880 S.W.2d 149 (Tex. Ct. App. 1994). We find these decisions easily distinguishable because none involved a party signing a subsequent document, such as the reform agreement here, by which the party again agreed to make payments of principal and interest. Although the defendants' contention that liability arises from accepting a deed may be correct, this is not a case of a simple deed acceptance. The defendants executed the reform agreement which, by its terms, was a separate, independent agreement by which they again agreed to pay the obligation. Accordingly, the trial court did not err in ruling that the defendants' liability arose from the reform agreement.

In light of these holdings, we need not address the defendants' arguments as to RSA 382-A:3-309 or their other UCC Article 3 contentions. *Cf. Appeal of Londonderry School Dist.*, 142 N.H. 677, 682, 707 A.2d 137, 141 (1998).

*II. Motion to Produce*

The defendants argue that the trial court erred by not fully granting their motion to produce all documents concerning the purchase price of the August 22 and April 1 notes. *See* SUPER. CT.

R. 35(b)(1). The defendants contend that all the requested documents were relevant because they showed that the plaintiff breached the covenant of good faith and fair dealing as it was not a holder or owner of the original notes and was unable to enforce them. "The trial court has broad discretion in the management of discovery . . . . We will not reverse the trial court's ruling unless there is a clear abuse of that discretion." *Bronson v. The Hitchcock Clinic*, 140 N.H. 798, 809, 677 A.2d 665, 672 (1996) (citation omitted). The defendants have the burden on appeal of demonstrating that the discretionary ruling is clearly untenable or unreasonable to the prejudice of their case. *See State v. Smith*, 135 N.H. 524, 525, 607 A.2d 611, 612 (1992).

The trial court granted the defendants' motion to produce on a limited basis, directing that if the plaintiff "made some individualized valuation of how much of the purchase price . . . would be attributable to the particular loans at issue, then plaintiff shall disclose said information to the defendants." The trial court stated that it partially granted the motion to aid in settlement.

◼ We agree with the trial court and fail to see how the amount recovered by the plaintiff for the entire pool of notes had any bearing on the merits of the case or in determining whether the plaintiff was in possession of the notes. *See* N.H. R. EV. 402; *State v. Walsh*, 139 N.H. 435, 436, 655 A.2d 912, 913 (1995). The defendants never disputed that they executed the reform agreement or the April 1 note. Therefore, the trial court did not abuse its discretion in its ruling on the motion to produce.

## III. April 1 Note

On cross-appeal, the plaintiff argues that RSA 382-A:3-309(a) does not bar it from enforcing the April 1 note. The plaintiff argues that the trial court misconstrued RSA 382-A:3-309(a)(i). The trial court found that the April 1 note was an unenforceable negotiable instrument because the plaintiff was not in possession of the instrument and entitled to enforce it when the loss of possession occurred. *See* RSA 382-A:3-309(a)(i); *see also Joslin*, 977 F. Supp. at 495. Further, it found that the FDIC could not assign the right to enforce to the plaintiff.

Again, we review the trial court's ruling to determine whether the trial court erred as a matter of law. *See Barnsley*, 142 N.H. at 723, 720 A.2d at 64. Because we conclude that the trial court erred in ruling that the plaintiff was barred from enforcing the April 1 note, we reverse.

The parties agree that the April 1 note was a negotiable instrument governed by UCC Article 3. Further, the parties agree that because the plaintiff's acquisition of the loan obligation took place subsequent to this State's adoption of the 1990 version of Article 3, that version governs the April 1 note.

RSA 382-A:3-301 states, in pertinent part, that a person not in possession of the instrument is entitled to enforce it pursuant to section 3-309. RSA 382-A:3-301 (1994). RSA 382-A:3-309 provides:

> (a) A person not in possession of an instrument is entitled to enforce the instrument if (i) the person was in possession of the instrument and entitled to enforce it when loss of possession occurred, (ii) the loss of possession was not the result of a transfer by the person or a lawful seizure, and (iii) the person cannot reasonably obtain possession of the instrument because the instrument was destroyed, its whereabouts cannot be determined, or it is in the wrongful possession of an unknown person or a person that cannot be found or is not amenable to service of process.

> (b) A person seeking enforcement of an instrument under subsection (a) must prove the terms of the instrument and the person's right to enforce the instrument. If that proof is made, Section 3-308 applies to the case as if the person seeking enforcement had produced the instrument. The court may not enter judgment in favor of the person seeking enforcement unless it finds that the person required to pay the instrument is adequately protected against loss that might occur by reason of a claim by another person to enforce the instrument. Adequate protection may be provided by any reasonable means.

We first determine whether the FDIC could have enforced the April 1 note. In October 1991, the FDIC was appointed receiver of the Dartmouth Bank. Thus, pursuant to 12 U.S.C.A. § 1821(d)(2)(A)(i), the FDIC succeeded to "all rights, titles, powers, and privileges" of the Dartmouth Bank by operation of law, including its right to enforce the April 1 note. *See Barnsley*, 142 N.H. at 725, 720 A.2d at 65; *see also FDIC v. Houde*, 90 F.3d 600, 606 (1st Cir. 1996). If Dartmouth Bank lost the April 1 note, then the FDIC succeeded to its right to enforce by operation of law and therefore complied with RSA 382-A:3-309(a)(i). *See* 12 U.S.C.A. § 1821(d)(2)(A)(i). On the other hand, if the April 1 note was lost by the FDIC, the FDIC still could have enforced the note because it

"was in possession of the instrument and entitled to enforce it when loss of possession occurred." RSA 382-A:3-309(a)(i).

■ Having determined that the FDIC could have enforced the April 1 note, we now address whether the trial court erred in finding that RSA 382-A:3-309 barred the FDIC from assigning its right to enforce the April 1 note to the plaintiff. RSA 382-A:1-103 (1994) provides that "[u]nless displaced by the particular provisions of this chapter the principles of law and equity . . . shall supplement its provisions." Neither the plain language nor the official comment to RSA 382-A:3-309 supports the trial court's determination that a person entitled to enforce a negotiable instrument cannot assign that right or that the intent behind section 3-309 was to displace the common law of assignments. Thus, in accordance with RSA 382-A:1-103, we look to State law to determine the assignability of an enforceable note under RSA 382-A:3-309.

■■ In this State, an assignee obtains the rights of the assignor at the time of the assignment. *See Woodstock Soapstone Co. v. Carleton*, 133 N.H. 809, 817, 585 A.2d 312, 316-17 (1991). Under the Loan and Sale Agreement, the FDIC assigned whatever right, title, and interest it had in the note to the plaintiff, the assignee. That assignment included the FDIC's right to enforce the April 1 note under RSA 382-A:3-309. As the assignee of the FDIC, the plaintiff may enforce the April 1 note against the defendants. *See NAB Asset Venture II, L.P. v. Lenertz, Inc.*, 36 UCC Rep. Serv. 2d 474, 479 (Minn. Ct. App. 1998); *cf. FDIC v. Bledsoe*, 989 F.2d 805, 810 (5th Cir. 1993) (under common law assignee stood in the shoes of his assignor and received its six-year period of limitations). Accordingly, we conclude that the trial court erred as a matter of law in barring the plaintiff's enforcement of the April 1 note. *See Barnsley*, 142 N.H. at 723, 720 A.2d at 64.

Because it ruled that the plaintiff could not enforce the April 1 note, the trial court made no determination as to the amount of the note that can be collected, and because the trial court failed to provide for "adequate protection" under the provisions of RSA 382-A:3-309(b), we remand for further proceedings consistent with this opinion.

*Affirmed in part; reversed in part; remanded.*

NADEAU, J., did not sit; the others concurred.