984 So.2d 375 (2007)
ATLANTIC NATIONAL TRUST, LLC
v.
Jack McNAMEE.
1060423.
Supreme Court of Alabama.
October 5, 2007.
Jason D. Woodard and Jennifer A. Harris of Burr & Forman, LLP, Birmingham, for plaintiff.
Rachel J. Moore and Donald D. Knowlton of Najjar Denaburg, P.C., Birmingham, for defendant.
MURDOCK, Justice.
The United States District Court for the Northern District of Alabama has certified the following question to this Court, pursuant to Rule 18, Ala. R.App. P.:
"Whether an assignee of a promissory note who was not in possession of the note at the time it was misplaced, lost, or destroyed may enforce the note, or whether a party who is entitled to enforce a lost instrument may assign its rights to enforce the instrument, in light of the provisions of Ala.Code § 7-3-309(a)?"

I. Factual and Procedural Background
The district court, in its certificate, set forth the following factual and procedural background:
"Plaintiff, Atlantic National Trust, LLC, has filed an action to collect on a promissory note executed by defendant, Jack McNamee. On or about December 22, 2003, SouthTrust Bank (now Wachovia) made a loan to defendant in the amount of $150,000. Defendant signed a promissory note with regard to the loan. At some point after the execution of the note, SouthTrust Bank (Wachovia) misplaced, lost or destroyed the original note. The loan matured on August 5, 2005. Wachovia assigned the note to plaintiff on December 21, 2005. Plaintiff made a demand on defendant for payment, but defendant has not repaid the loan in full. The principal balance remaining on the loan is $138,620, with *376 interest accrued as of March 1, 2006, of $13,339.67 and accruing at the rate of $33.96 per diem. Plaintiff also claims defendant owes fees and costs under the note.
"Plaintiff has filed a motion for summary judgment in this action. Plaintiff has submitted the affidavit of Daniel Sisk, one of its Asset Managers, to which is attached as an exhibit a lost note affidavit dated December 21, 2005. The lost note affidavit is executed by Terri Odom, an Assistance Vice President of Wachovia, and states that she reviewed the files pertaining to the note executed on December 22, 2003, by Jack McNamee in favor of SouthTrust Bank for the principal amount of $150,000. She further states that after the note was executed and delivered to the borrower, it was misplaced, lost or destroyed. The affidavit states that the original note could not be found after diligent search and inquiry, but that a true, correct and complete copy of the note is attached to the lost note affidavit. The affidavit assigns the note to Atlantic National Trust.
"In opposition, defendant asserts that under Alabama law, because Wachovia did not have possession of the original note at the time it assigned the note to Atlantic National Trust, it had no right to enforce the note and, thus, neither does Atlantic National Trust. In addition, defendant asserts that because Atlantic National Trust never had possession of the note, it cannot enforce it. Defendant contends that plaintiff is barred from enforcing the promissory note based upon Ala.Code § 7-3-309(a)."

II. Analysis
The certified question references Article 3 of Alabama's version of the Uniform Commercial Code, § 7-3-101 et seq., Ala. Code 1975, which deals with negotiable instruments.[1] The question presented is whether the right to enforce a lost, destroyed, or stolen promissory note, which was lost, destroyed, or stolen while in the possession of the assignor can vest in the assignee of the promissory note. We hold that it can, and we therefore answer the certified question in the affirmative.
Section 7-3-301, Ala.Code 1975, provides, in pertinent part:
"`Person entitled to enforce' an instrument means (i) the holder of the instrument, (ii) a nonholder in possession of the instrument who has the rights of a holder, or (iii) a person not in possession of the instrument who is entitled to enforce the instrument pursuant to Section 7-3-309. . . . "
Section 7-3-309, provides, in pertinent part:
"A person not in possession of an instrument is entitled to enforce the instrument if (i) the person was in possession of the instrument and entitled to enforce it when loss of possession occurred, (ii) the loss of possession was not the result of a transfer by the person or a lawful seizure, and (iii) the person cannot reasonably obtain possession of the instrument because the instrument was destroyed, its whereabouts cannot be determined, or it is in *377 the wrongful possession of an unknown person or a person that cannot be found or is not amenable to service of process."
McNamee contends that the plain language of these statutes provides that when a promissory note has been lost, destroyed, or stolen, it can be enforced only by the entity that was in possession of the note at the time it was lost, destroyed, or stolen, and that that entity cannot assign the right to enforce the note. In support, McNamee cites Dennis Joslin Co. v. Robinson Broadcasting Corp., 977 F.Supp. 491 (D.D.C.1997), in which the federal district court for the District of Columbia held that the District of Columbia's version of § 3-309 of the Uniform Commercial Code (which, at the time of that opinion was identical to Alabama's current version of that section) prevents the assignee of a note that was lost, destroyed, or stolen before assignment from enforcing the note. Said the court:
"While there does not appear to be a logical reason to distinguish between a person who was in possession at the time of the loss and one who later comes into possession of the rights to the note, the plain language of the provision mandates that the plaintiff suing on the note must meet two tests, not just one: it must have been both in possession of the note when it was lost and entitled to enforce the note when it was lost."
977 F.Supp. at 495 (emphasis omitted). See also Cadle Co. of Conn. v. Messick, 30 Conn. L. Rptr. 21, 45 UCC Rep. Serv.2d 563 (Conn.Super.Ct.2001) (not reported in A.2d) (relying on, and reaching the same conclusion as, Dennis Joslin Co.).
Atlantic National Trust, LLC, contends that, because § 7-3-309 is silent with regard to the assignability of the right to enforce a lost, destroyed, or stolen promissory note, other provisions of Alabama's version of the Uniform Commercial Code determine whether such a right is assignable. For example, Atlantic National cites § 7-3-203, which provides that the transfer of a negotiable instrument vests in the transferee all of the transferor's rights in the instrument, including the right to enforce the instrument. Atlantic National also argues that § 7-1-103 (Alabama's version of § 1-103 of the Uniform Commercial Code) incorporates Alabama common-law principles regarding assignments and that under these principles an assignee acquires all of the rights of its assignor. Atlantic National contends that § 7-1-103 also incorporates the equitable doctrines of unjust enrichment, money had and received, and subrogation, all of which, it contends, would allow an assignee of a lost, destroyed, or stolen promissory note to enforce the note.
A number of courts have reached the same conclusion that Atlantic National urges this Court to reach. Many of those courts have based their holding regarding the right to enforce a lost, destroyed, or stolen instrument under § 3-309 of the Uniform Commercial Code on their view that Article 3 of the Uniform Commercial Code is silent as to the effect of a purported assignment of a note that was lost, destroyed, or stolen before the purported assignment, and, as a result, common-law principles governing assignments supplement Article 3 and permit the assignment of that enforcement right. See, e.g., In re Caddo Parish-Villas South, Ltd., 250 F.3d 300, 302 (5th Cir.2001); YYY Corp. v. Gazda, 145 N.H. 53, 59-61, 761 A.2d 395, 400-01 (2000). Other courts have concluded that an assignee of a lost, destroyed, or stolen instrument obtains the right to enforce the instrument via § 3-203 of the Uniform Commercial Code, which states, in pertinent part, that the "[t]ransfer of an instrument . . . vests in the transferee any *378 right of the transferor to enforce the instrument. . . ."[2]See, e.g., Bobby D. Assocs. v. DiMarcantonio, 2000 Pa.Super. 132, 751 A.2d 673, 675-76 (2000); NAB Asset Venture II, L.P. v. Lenertz, Inc., 36 UCC Rep. Serv.2d 474, 478-79 (Minn.Ct. App.1998) (not reported in N.W.2d). Still others have held that a lost, destroyed, or stolen note is assignable without engaging in either of these analyses. See, e.g., Southeast Invs., Inc. v. Clade, 40 UCC Rep. Serv.2d 255 (N.D.Tex.1999) (not reported in F.Supp.2d); Deakter v. Menendez, 830 So.2d 124, 129 (Fla.Dist.Ct.App. 2002); National Loan Investors, L.P. v. Joymar Assocs., 767 So.2d 549, 551 (Fla. Dist.Ct.App.2000).
After a thorough review of the applicable statutes and the legal authorities from other jurisdictions that have addressed this question, we conclude that § 3-309 of the Uniform Commercial Code, as enacted in Alabama, does not prohibit the post-loss assignment of the right to enforce a lost, destroyed, or stolen promissory note. We are not persuaded that the fact that § 3-309 does not specifically allow the assignment of the right to enforce a lost, destroyed, or stolen promissory note is equivalent to a statutory prohibition on such an assignment.
In reaching this conclusion, we do not rely on § 3-203 of the Uniform Commercial Code, which is codified as § 7-3-203 in the Alabama Code and which relates to the transfer of negotiable instruments. Under that section, a "transfer" of an instrument can be accomplished only by its "delivery" to the transferee. "Delivery," in turn, requires a "voluntary transfer of possession" of the instrument. Ala.Code 1975, § 7-1-201(b)(15). If an instrument is lost, destroyed, or stolen, it is no longer "possessed" by its owner and, as a result, cannot be "delivered" as required to effect a transfer of the instrument under § 7-3-203.
Indeed, it is precisely because neither § 7-3-203, specifically, nor Article 3, generally, addresses the assignability of rights under a promissory note after the note has been lost, destroyed, or stolen, that we adopt the rationale of those cases applying the common law pursuant to § 1-103 of the Uniform Commercial Code. Section 7-1-103, Ala.Code 1975 (Alabama's version of § 1-103 of the Uniform Commercial Code), provides that, "[u]nless displaced by the particular provisions of this title, the principles of law and equity . . . supplement its provisions." Because Alabama's version of the Uniform Commercial Code does not address the effect of an assignment of a note that has been lost, stolen, or destroyed, we look to Alabama common law to guide our inquiry.
Under Alabama common law, "[a] valid assignment gives the assignee the same rights, benefits, and remedies that the assignor possesses," such that the assignee "simply steps into the shoes of the assignor. . . ." Nissan Motor Acceptance Corp. v. Ross, 703 So.2d 324, 326 (Ala. 1997). Applying this law to the context of a lost, destroyed, or stolen promissory note, we hold that if the assignor of a promissory note was entitled, when the assignor owned the note, to enforce the note under § 7-3-309, the assignee of the promissory note steps into the assignor's shoes and acquires the right to enforce the promissory note under § 7-3-309.

III. Answer
Based on the foregoing, our answer to the question certified by the district court *379 is as follows: An assignee of a promissory note that was not in possession of the note at the time it was misplaced, lost, or destroyed may enforce the note under § 7-3-309 if, before the assignment, the assignor was entitled to enforce the note under § 7-3-309.
QUESTION ANSWERED.
SEE, WOODALL, STUART, and BOLIN, JJ., concur.
COBB, C.J., and LYONS, SMITH, and PARKER, JJ., concur in the result.
LYONS, Justice (concurring in the result).
As the main opinion points out, Dennis Joslin Co. v. Robinson Broadcasting Corp., 977 F.Supp. 491, 495 (D.D.C.1997), is the leading case standing for the proposition that the assignee of a lost instrument who never possessed the instrument is unable to enforce the instrument. That decision triggered an amendment to the Uniform Commercial Code specifically designed to produce a contrary result. The current version of § 3-309, Enforcement of Lost, Destroyed, or Stolen Instrument, reads, in pertinent part, as follows:
"(a) A person not in possession of an instrument is entitled to enforce the instrument if:
"(1) the person seeking to enforce the instrument:
"(A) was entitled to enforce the instrument when loss of possession occurred; or
"(B) has directly or indirectly acquired ownership of the instrument from a person who was entitled to enforce the instrument when loss of possession occurred."
(Emphasis added.)
The Official Comment provides:
"Subsection (a) is intended to reject the result in Dennis Joslin Co. v. Robinson Broadcasting Corp., 977 F.Supp. 491 (D.D.C.1997). A transferee of a lost instrument need prove only that its transferor was entitled to enforce, not that the transferee was in possession at the time the instrument was lost. The protections of subsection (a) should also be available when instruments are lost during transit, because whatever the precise status of ownership at the point of loss, either the sender or the receiver ordinarily would have been entitled to enforce the instrument during the course of transit. The amendments to subsection (a) are not intended to alter in any way the rules that apply to the preservation of checks in connection with truncation or any other expedited method of check collection or processing."
Alabama has not adopted the amended version of § 3-309. Consequently, in order to recognize the right of the assignee in this proceeding, we must do so within the framework of § 7-3-309, Ala.Code 1975, the pre-amendment version of § 3-309 of the Uniform Commercial Code. The main opinion does so in reliance upon § 7-1-103(b), Ala.Code 1975, which provides:
"(b) Unless displaced by the particular provisions of this title, the principles of law and equity, including the law merchant and the law relative to capacity to contract, principal and agent, estoppel, fraud, misrepresentation, duress, coercion, mistake, bankruptcy, and other validating or invalidating cause supplement its provisions."
The main opinion reasons that preexisting principles of law governing assignments were not displaced by applicable provisions of the Alabama version of the Uniform Commercial Code and because such principles of law would permit the assignment of *380 a lost instrument, an assignee is entitled to enforce the instrument.
I am persuaded by the reasoning in Timothy R. Zinnecker, Extending Enforcement Rights to Assignees of Lost, Destroyed, or Stolen Negotiable Instruments Under U.C.C. Article 3: A Proposal for Reform, 50 U. Kan. L.Rev. 111 (2001), in which the author concludes that it is inappropriate to treat the relevant provisions of the Uniform Commercial Code as creating a gap that can be filled by injecting pre-Code principles of law governing assignments pursuant to § 1-103(b). The author states:
"Section 1-103 states what has been referred to as the `Swiss cheese theory' of Code interpretation: `Regard the Code as a piece of Swiss cheese with all its holes, and if, when you search for a solution to your case, you find a hole in the Code, look through it to the backdrop of case law.' And, as happened in Beal Bank[, S.S.B. v. Caddo Parish-Villas South, Ltd., 218 B.R. 851 (N.D.Tex.1998), aff'd, 250 F.3d 300 (5th Cir.2001)] and YYY Corp. [v. Gazda, 145 N.H. 53, 54, 761 A.2d 395, 396 (2000) ], courts that have addressed whether a party may enforce a lost instrument that it never possessed have concluded that the Code has a hole in it that can be filled by general assignment law.
"But the hole disappears when three Article 3 provisions are examined collectively: sections 3-301, 3-309, and 3-203. Section 3-301 describes with particularity those parties that enjoy enforcement rights. Acknowledging that an instrument may be lost, stolen, or destroyed, section 3-301 conveys PETE [Person Entitled to Enforce] status in the missing instrument to a party if that party can satisfy the three requirements of section 3-309. The first requirement, in unambiguous language, requires the party asserting enforcement rights in the instrument to have been `in possession of the instrument and entitled to enforce it when loss of possession occurred.' Furthermore, Article 3 is not silent on the assignability of enforcement rights bestowed on parties under section 3-301. Section 3-203 states: `Transfer of an instrument . . . vests in the transferee any right of the transferor to enforce the instrument. . . .' And section 3-203 leaves no room for doubt as to the meaning of `transfer of an instrument.' An instrument is transferred if, and only if, the transferor delivers  voluntarily transfers possession of  the instrument. Section 3-203 simply does not permit the assignment of enforcement rights in a lost instrument. To reach a contrary result that rests on general assignment law incorporated through section 1-103 is to ignore that statute's opening caveat  `Unless displaced by the particular provisions of this Act'  and to supplant, rather than supplement, Article 3 provisions that specifically address enforcement of lost instruments and assignment of enforcement rights."
50 U. Kan. L.Rev. at 129-30 (emphasis added) (footnotes omitted).
However, the author advocates reaching the same result by embracing that aspect of § 1-103(b) giving a field of operation for principles of equity. The author reasons:
"Section 1-103 states: `Unless displaced by the particular provisions of this Act, the principles of law and equity . . . shall supplement its provisions.' As noted by one author, `[t]he crucial issue here, of course, is determining the meaning of "displaced."' Proper resolution of that issue significantly turns on whether one seeks to apply principles of law or principles of equity. Professors *381 White and Summers comment on the distinction:
"`The relations between general equitable principles and Code provisions are quite unlike the relations between general legal principles and Code provisions. One primary function of the corpus of Code sections is generally to displace prior legal principles. But it is not a primary function of these sections to displace prior equitable principles. To put this another way, Code sections "occupy the legal field" except insofar as they do not "particularly" displace pre-existing legal principles. But it is wrong to think of the relation between Code sections and general equitable principles in this way. Code sections do not "occupy the equity field." Rather, general equitable principles remain largely intact, for they are only rarely "particularly displaced." In a sense, then, they are the main occupants of the relevant field. This follows from their basic character. Unlike general legal principles, they do not merely supplement Code sections; their function is also to carve exceptions from or otherwise modify Code sections, and the courts have recognized as much. These functions are not peculiar to the bearing of 1-103 equitable principles on Code rules; they are characteristic of the bearing of equitable principles upon legal rules throughout the law.'
"Because assignment principles are rooted in law, rather than equity, courts should avoid applying assignment principles through section 1-103 if Code sections adequately address the pertinent issue. As observed earlier, three statutory provisions in Article 3  sections 3-301, 3-309, and 3-203  collectively address enforcement rights in lost, destroyed, and stolen instruments and the transferability of those enforcement rights. Because these Code sections occupy the legal field on this issue and adequately displace general assignment principles, courts should not invoke and apply general assignment principles through section 1-103.

"Notwithstanding the direction afforded by sections 3-301, 3-309, and 3-203, these statutes do not preempt general equitable principles. Therefore, a court's reliance on section 1-103 is not misplaced when its departure from Code provisions rests on equitable, rather than legal, principles. And one or more equitable doctrines do exist that permit a court to conclude that a party that never possessed a missing instrument may nevertheless enforce it."
50 U. Kan. L.Rev. at 134-35 (emphasis added) (footnotes omitted).
We recently discussed the equitable doctrines of unjust enrichment and restitution in Scrushy v. Tucker, 955 So.2d 988, 1011-12 (Ala.2006):
"The law in Alabama concerning unjust enrichment is substantially the same [as the law of Delaware]:
"`To prevail on a claim of unjust enrichment, the plaintiff must show that the "`defendant holds money which, in equity and good conscience, belongs to the plaintiff or holds money which was improperly paid to defendant because of mistake or fraud.'" Dickinson v. Cosmos Broad. Co., 782 So.2d 260, 266 (Ala.2000) (quoting Hancock-Hazlett Gen. Constr. Co. v. Trane Co., 499 So.2d 1385, 1387 (Ala. 1986)) (some emphasis omitted; some emphasis added). "The doctrine of unjust enrichment is an old equitable remedy permitting the court in equity and good conscience to disallow one to be unjustly enriched at the expense of another." Battles v. Atchison, 545 *382 So.2d 814, 815 (Ala.Civ.App.1989) (emphasis added).
"`"[T]he remedy of restitution is designed to remedy the detrimental effects caused by unjust enrichment." Utah Foam Prods., Inc. v. Polytec, Inc., 584 So.2d 1345, 1351 (Ala.1991). "A claim for restitution is equitable in nature, and permits a trial court to balance the equities and to take into account competing principles to determine if the defendant was unjustly enriched." United Coastal Indus., Inc. v. Clearheart Constr. Co., 71 Conn.App. 506, 513, 802 A.2d 901, 906 (2002) (emphasis added). Consequently, "`[t]he success of a claim for unjust enrichment depends on the particular facts and circumstances of each case.'" DJ Painting, Inc. v. Baraw Enters., Inc., 172 Vt. 239, 245, 776 A.2d 413, 419 (2001) (quoting Morrisville Lumber Co. v. Okcuoglu, 148 Vt. 180, 184, 531 A.2d 887, 889 (1987)).'
"Avis Rent A Car Sys., Inc. v. Heilman, 876 So.2d 1111, 1122-23 (Ala.2003)."
I would ground the right of Atlantic National Trust, LLC, to proceed based on the equitable doctrines of unjust enrichment and restitution so as to avoid a windfall for Jack McNamee, the maker of the lost note. Because, as I read the main opinion, it relies upon pre-Code principles of law applicable to assignments as justification for awarding relief to the assignee, I concur only in the result.
COBB, C.J., and SMITH and PARKER, JJ., concur.
NOTES
[1] Implicit in the district court's certificate is its determination that the promissory note at issue satisfies each of the requirements detailed in § 7-3-104 and therefore constitutes a "negotiable instrument" as defined in that section. Were this not the case, the certified question, based as it is on § 7-3-309, would not be determinative of the cause before the district court and therefore would not be eligible for certification to this Court. See Rule 18(a), Ala. R.App. P.
[2] Section 3-203 of the Uniform Commercial Code has been enacted in Alabama as § 7-3-203, Ala.Code 1975.