**BEAL BANK, S.S.B., Appellant,**

v.

**CADDO PARISH–VILLAS SOUTH, LTD., Appellee.**

Civ.A. No. 3:97–CV–2405–P.

United States District Court,
N.D. Texas,
Dallas Division.

Feb. 27, 1998.

Lynnette Randee Warman, Jenkens & Gilchrist, Dallas, TX, for Appellant.

John M. Chevallier, Hale, Aston, Sckel & Taubenfeld, Dallas, TX, for Appellee.

## MEMORANDUM OPINION AND ORDER

SOLIS, District Judge.

Now before the Court is Appellant's appeal from the United States Bankruptcy Court for the Northern District of Texas, Dallas Division. Appellant filed its initial brief November 3, 1997, Appellee filed its brief on December 2, 1997, and Appellant filed a Reply Brief on December 12, 1997. Immediately before commencing with oral argument on February 11, 1998, Appellant filed a Supplement to the Reply Brief. Appellant seeks a reversal of an Order issued by the Bankruptcy Court which sustained Appellee's objection to Appellant's Proof of Claim. Further, Appellant contends that the Bankruptcy Court erred in denying Appellant's request to amend the Bankruptcy Court's Order and Appellant's Motion for Reconsideration. For the reasons set forth below, the Court is of the opinion that the ruling of the Bankruptcy Court should be REVERSED and REMANDED.

## BACKGROUND

The underlying facts in this appeal are essentially undisputed. Caddo Parish–Villas South, Ltd. ("Caddo Parish" or "Appellee") filed bankruptcy on November 10, 1996. Beal Bank, S.S.B. ("Beal Bank" or "Appellant") filed a Proof of Claim (the "Claim") in connection with this bankruptcy proceeding on February 14, 1997. Beal Bank based this claim on a Mortgage Note (the "Note") and an Act of Mortgage (the "Mortgage"). Caddo Parish objected to the Claim because Beal Bank was not in actual possession of the Note. After a hearing on June 20, 1997, the Bankruptcy Court, Hon. Judge Harold Abramson presiding, sustained the objection of Caddo–Parish and disallowed Beal Bank's claim (the "June Order").

The Note and Mortgage have a history of transfers and assignments dating back to their issuance on August 13, 1971. Housing America Mortgage Company, Inc. ("HAMC") originally issued the Note and the Mortgage.[1] Two years after its execution, HAMC properly endorsed and transferred the Note and Mortgage to the Federal National Mortgage Association ("FNMA"). When Appellant defaulted, FNMA assigned the Note and Mortgage to the Secretary of Housing and Urban Development ("HUD"). HUD held the Note and Mortgage for the next twenty-one years and when a workout agreement could not be reached with Caddo Parish, HUD sold and assigned the Note and Mortgage to Beal Bank. At the time of Beal Bank's purchase, HUD could not locate the Note, but HUD stated that it had not assigned, transferred, or sold the Note to any entity other than Beal Bank. The Note was in default at the time of Beal Bank's purchase and it is undisputed that Beal Bank has never obtained possession of the actual Note.

In the current appeal, Beal Bank asserts that it is the rightful owner of the Note and entitled to claim this defaulted Note against the bankrupt estate of Caddo Parish. As such, Beal Bank argues that the Bankruptcy Court erred in sustaining the objection of Caddo Parish to Beal Bank's Claim. Further, Beal Bank contends that the Bankruptcy Court erred in denying its request to amend the June Order to reflect that Beal Bank is the owner of the Mortgage and entitled to enforce it. Finally, Beal Bank asserts that the Bankruptcy Court erred in

---

1. The Mortgage states that, in the event of default, "it shall be lawful for the holder or holders of the Note, without making a demand and without notice or putting in default, the same being expressly waived, to cause all and singular the property herein mortgaged, to be seized and sold by executory process ...." (Mortgage, at ¶ 20).

denying its Motion for Reconsideration of the June Order. The basis of Beal Bank's Motion for Reconsideration was a subsequent assignment of HUD's rights under the Note and Mortgage to Beal Bank, which made clear that HUD intended to assign all of its rights, including those under Section 3–309, to Beal Bank.

## DISCUSSION

### I. STANDARD OF REVIEW

When a district court reviews a bankruptcy court's decision, it functions as an appellate court and utilizes the same standard of review generally applied by a federal court of appeals. *In re Webb,* 954 F.2d 1102, 1104 (5th Cir.1992). In reviewing conclusions of law on appeal, a *de novo* standard of review is applied. *In re Coutee,* 984 F.2d 138, 140 (5th Cir.1993); *In re Young,* 995 F.2d 547, 548 (5th Cir.1993); *In re Allison,* 960 F.2d 481, 483 (5th Cir.1992). A bankruptcy court's findings of fact are subject to the clearly erroneous standard of review. *Young,* 995 F.2d at 548; *Allison,* 960 F.2d at 483. These findings are reversed only if, based on the entire evidence, the court is left "with the definite and firm conviction that a mistake has been made." *Id.*

### II. BEAL BANK'S CLAIM ON THE NOTE

In its first point of error on appeal, Appellant claims that the Bankruptcy Court erred in sustaining the objection of Caddo Parish to Beal Bank's Proof of Claim on the Note. Specifically, although Beal Bank has never been in possession of the Note, Appellant argues that it has properly established its ownership interest in the Note through duly sworn testimony. Since Caddo Parish does not contest the execution of the Note, the terms of the Note, or the recording of the Mortgage and since Beal Bank followed all of the procedures under Louisiana law[2] for proving and enforcing a lost instrument, Appellant asserts that it was error for the Bankruptcy Court to deny its Claim. The Court agrees with Appellant and concludes that the Bankruptcy Court did err in disallowing Beal Bank's Claim. In dealing with Beal Bank's Claim under the Note, the Bankruptcy Court properly focused its attention on Louisiana's version of the Uniform Commercial Code (the "La. UCC"). Initially, the issue for purposes of the Note is whether Beal Bank has satisfied the requirements of La. UCC § 3–309(a) for enforcement of a lost instrument.[3] If Beal Bank can meet the preliminary requirements of Section 3–309(a), the issue then becomes whether Beal Bank has satisfied the requirements of La. Rev.Stat. 10:3–309(b) for enforcing lost written instruments.[4] In short, the sole issue for purposes of this appeal is whether Beal Bank, as HUD's assignee, can enforce the Note and Mortgage against Caddo Parish under La. UCC § 3–309.

### A. Enforcement under La. UCC § 3–309

The Note is a negotiable instrument as defined by La. UCC § 3–104 because there is no dispute that it is (i) in writing, (ii) signed by the maker or drawer, (iii) containing an unconditional promise or order to pay a sum certain, (iv) payable on demand or at a defi-

---

2. In footnote 4 of its Brief, Appellant indicates that the Texas version of the Uniform Commercial Code might apply in this matter, but Appellant proceeds to focus its entire argument on Louisiana law. Further, Beal Bank's position in the Bankruptcy Court was that Louisiana law should apply to this dispute. (Response to Claim Objection, at 3). Since there does not appear to be an issue on appeal as to whether Texas or Louisiana law applies, the Court will construe Louisiana law in deciding the points of error on appeal.

3. Any reference to La.Rev.Stat. will be cited as "La. UCC" followed by the applicable section.

4. Appellant begins its argument by citing three provisions of the Louisiana Civil Code relating to lost written instruments and various cases interpreting these provisions. (Appellant Brief, at 7–10). All of the cases discussed by Appellant in this section of its Brief are inapposite of the matter before the Court, however, because in each cited case, the party seeking to enforce the note at issue had possession of the note prior to its loss. In the current matter, there is no dispute that Beal Bank did not have possession of the Note before its loss. Further, each case cited by Appellant occurred before January 1, 1994, which is the date when Louisiana adopted Section 3–309.

nite time, and (v) payable to order or to bearer. La.Rev.Stat. 10:3–104. Since the Note meets all of the requirements for a negotiable instrument, Article 3 of the La. UCC should be applied to determine whether it is enforceable.[5]

La. UCC Section 3–309(a), effective January 1, 1994, provides:

> (a) A person not in possession of an instrument is entitled to enforce the instrument if (i) the person was in possession of the instrument and entitled to enforce it when loss of possession occurred, (ii) the loss of possession was not the result of a transfer by the person or a lawful seizure, and (iii) the person cannot reasonably obtain possession of the instrument because the instrument was destroyed, its whereabouts cannot be determined, or it is in the wrongful possession of an unknown person or a person that cannot be found or is not amenable to service of process.

La.Rev.Stat. 10:3–309(a). Appellant argues that the Bankruptcy Court erred in focusing only on the literal reading of Section 3–309(a) and ruling that Appellant could not enforce the Note. Appellant asserts that the proper remedy would be to require Beal Bank to provide adequate protection to Caddo Parish in the form of indemnity from other claims under the Note as suggested in La. UCC § 3–309(b).[6] (Appellant Brief, at 11–12). The Court agrees with Appellant and finds that Beal Bank is entitled to enforce the Note and Mortgage as HUD's assignee under Section 3–309(a).

La. UCC § 3–309(a) is a modification of former La. UCC § 3–804. The Comments to Section 3–309 indicate that "[t]he rights stated are those of 'a person entitled to enforce the instrument' at the time of loss rather than those of an 'owner' as in former Section 3–804." UCC § 3–309, Official Comment (1990). While the language of Section 3–309(a) is unambiguous that only a person who was in possession of the instrument when it was lost is entitled to enforce the lost instrument, there is nothing in the language of Section 3–309(a) or the legislative history to indicate that a person entitled to enforce a negotiable instrument under Section 3–309 cannot assign these rights to another party. In the current matter, HUD was the "person entitled to enforce the instrument" at the time the Note was lost, and HUD has assigned their entitlement under the Note to Beal Bank. The Court now turns to a consideration of whether this action is permissible under Section 3–309.

The parties have been unable to cite and the Court has not located any cases discussing the application of Section 3–309 under Louisiana law. Appellee does, however, rely on a district court opinion from the District of Columbia, which dealt with facts similar to those in the present matter. *See Dennis Joslin Co., LLC v. Robinson Broadcasting Corp.*, 977 F.Supp. 491 (D.D.C.1997). In *Dennis Joslin*, the plaintiff sued to recover money owed on a lost promissory note. The plaintiff was an assignee who was not in possession of the note when the loss occurred. The district court concluded that Section 3–309 is intended to protect defen-

---

5. In its Reply Brief, Appellant asserts that Article 3 of the La. UCC somehow does not apply to the Note. Appellant argues that since the remedy against Appellee deals with personal property, the UCC cannot apply. (Appellant Reply, at 2). Appellant cites La. UCC § 9–104(j) for this argument. The Court is unconvinced because, although Article 9 deals with secured transactions involving personal property, the Note is clearly a negotiable instrument that is properly analyzed under Article 3. Appellant also makes an effort to argue that Article 3 does not apply to the Note, but Appellant offers no case law in support of its three-sentence argument (Appellant Reply, at 2). The Court finds, and the vast majority of Appellant's argument concedes, that the "lines of battle" should be drawn over the application of La. UCC § 3–309 to the Note.

6. La. UCC § 3–309(b) provides:

A person seeking enforcement of an instrument under Subsection (a) must prove the terms of the instrument and the person's right to enforce the instrument. If that proof is made, R.S. 10:3–308 applies to the case as if the person seeking enforcement had produced the instrument. The court may not enter judgment in favor of the person seeking enforcement unless it finds that the person required to pay the instrument is adequately protected against loss that might occur by reason of a claim by another person to enforce the instrument. Adequate protection may be provided by any reasonable means.

La. R.S. 10:3–309(b).

dants from being obligated to two entities with conflicting claims. *Dennis Joslin*, 977 F.Supp. at 494. Since the plaintiff did not have possession of the note at the time it was lost, the court ruled that Section 3–309 precluded recovery. *Id.* at 495. The district court in *Dennis Joslin* did not, however, consider the issue that this Court views as primary in this appeal: whether a party who is entitled to enforce a lost instrument may assign its rights to enforce the instrument under Section 3–309(a).

■ Appellee's argument against Appellant enforcing the Note is based solely on the language of Section 3–309(a). Appellee does not, however, consider the effect of other Louisiana laws on Section 3–309(a).[7] Under general assignment law, the assignee takes the position of the assignor. La. Civ.Code arts. 2642–2654 (1995). Further, La. UCC § 1–103 makes it clear that "[u]nless displaced by particular provisions of (the UCC), the other laws of Louisiana shall apply." According to the Louisiana Comment to La. UCC § 1–103, the purpose of this provision is to make clear that if a situation is not explicitly covered by the UCC provisions, the rest of Louisiana law applies without limitation. La. Comment to La. R.S. 10:1–103 (1974). HUD is undisputably the party entitled to enforce the lost Note under La. UCC § 3–309(a). HUD assigned all of its rights in the Note, including those of enforceability under Section 3–309(a), to Beal Bank. (Appellant Brief, at Ex. A). Thus, as the assignee of HUD, Beal Bank may enforce the Note against Caddo Parish, but only if Beal Bank has demonstrated that HUD satisfied the requirements of La. UCC § 3–309.

■ La. UCC § 3–309(a) requires a party to meet three requirements before a lost instrument may be enforced. First, the person must have been in possession of the instrument and entitled to enforce it when the loss occurred. It is clear that HUD was in possession of the Note when the loss occurred, since HUD took actual possession of the Note from FNMA but could not locate

the Note when HUD sold the Note to Beal Bank. Second, the loss of possession cannot be the result of a transfer or lawful seizure. When HUD sold the Note to Beal Bank, it indicated that the Note could not be located, and HUD stated in a sworn document that the Note had not been assigned or transferred to any other party. (Barber Aff., at Ex. Q and R). The third and final requirement under Section 3–309(a) is that the person entitled to enforce the instrument cannot reasonably obtain possession of the instrument because its whereabouts cannot be determined. Although HUD conducted a diligent search for the Note, HUD was unable to locate the Note (not an extraordinary occurrence since HUD had been the holder of the Note for over twenty years). Based on this evidence, Beal Bank successfully demonstrated that HUD satisfied the requirements of La. UCC § 3–309(a) for enforcing a lost instrument and the Bankruptcy Court erred in determining otherwise.

■ Beal Bank has complied with the requirements of Section 3–309(a) as the assignee of HUD. There is another provision which Beal Bank must satisfy, however, before the lost Note can be enforced. Under La. UCC 3–309(b), if a party meets the requirements of Section 3–309(a), the party must prove the terms of the lost instrument and the person's right to enforce the instrument. Beal Bank has proven the terms of the instrument by submitting a copy of the Note and Mortgage at the bankruptcy proceeding. (Barber Aff., Ex. A and D). Further, Section 3–309(b) requires the payee to "adequately protect" the payor against another party attempting to enforce the instrument; adequate protection may be provided by "any reasonable means." La. R.S. 10:3–309(b). Beal Bank has suggested that adequate protection would be for Beal Bank to indemnify Caddo Parish in the event another party attempts to enforce the Note. This suggestion of indemnification appears to be consistent with the policy behind Section 3–309, which seeks to protect debtors from

---

7. Appellee argues that under an established theory of statutory construction, the specific rule prevails over the general. (Appellee Brief, at 12–13). While the Court recognizes this rule as a valid theory of statutory interpretation, another well-established theory is to read statutes in conjunction, not opposition, to one another.

being obligated to two separate parties. Nevertheless, whether indemnification is required to adequately protect Caddo Parish in this situation is an issue that the Bankruptcy Court should determine. This issue is therefore remanded to the Bankruptcy Court for determination.

## III. BEAL BANK'S CLAIM ON THE MORTGAGE

Beal Bank is entitled to enforce the Note against Caddo Parish because Beal Bank has satisfied all of the requirements of La. UCC § 3–309. As such, Beal Bank is also entitled to enforce the Mortgage. In an oral ruling, the Bankruptcy Court held that Beal Bank was not entitled to enforce the Mortgage because, according to the Bankruptcy Court's interpretation of Section 3–309(a), Beal Bank was not allowed to enforce the Note. Implicitly, the Bankruptcy Court ruled that Beal Bank cannot separately enforce the Note and the Mortgage. The Note clearly indicates that it is secured by the Mortgage. Further, the Mortgage states in Paragraph 20 that if there is any default by Caddo Parish, "the **Note** shall, at the **option of the holder**, become due and payable." (Mortgage, at ¶ 20) (emphasis added). Since the Court has ruled that Beal Bank is entitled to enforce the Note under La. UCC § 3–309, Beal Bank can also enforce the Mortgage.

## IV. BEAL BANK'S MOTION FOR RECONSIDERATION

Appellant also asserts error on the part of the Bankruptcy Court in denying its Motion for Reconsideration because the Bankruptcy Court refused to consider an assignment executed by HUD. The Court agrees with Appellant and concludes that the Bankruptcy Court erred in denying Appellant's Motion for Reconsideration. Although there was arguably sufficient documentation to prove that Beal Bank was the assignee of HUD, the evidence of HUD's subsequent assignment is material to the discussion under La. UCC § 3–309. This later assignment makes it clear that HUD intended to assign all of its rights under the Note and Mortgage to Beal Bank. Thus, the decision of the Bankruptcy Court to deny Beal Bank's Motion for Recon-

sideration was in error and this determination is REVERSED.

## CONCLUSION

The specific requirements of La. UCC § 3–309(a) for enforcing a lost instrument operate in conjunction with the general law of assignment. There is absolutely nothing in the text of the statute or the legislative history to indicate that a party entitled to enforce a lost instrument under Section 3–309(a) cannot assign this right to another party. HUD was entitled to enforce the lost Note and HUD assigned this right to Beal Bank. This action is not prohibited by Section 3–309(a). The Bankruptcy Court erred in holding that Beal Bank could not enforce the Note under Section 3–309. Thus, having thoroughly reviewed the parties' arguments and the applicable law, the Bankruptcy Court's ruling is REVERSED and REMANDED for a determination of whether Beal Bank should be required to indemnify Caddo Parish from future claims on the Note in accordance with La. UCC § 3–309(b).

**So Ordered.**