*Jones v. Ward*, No. 1071, September Term, 2020. Opinion by Ripken, J.

**MORTGAGES AND DEEDS OF TRUST – FORECLOSURE – PERSONS ENTITLED TO FORECLOSE**

Persons not in possession of an instrument may nonetheless establish their entitlement to enforce the instrument pursuant to Maryland Commercial Law Article ("CL") § 3-309 if they establish that they were in possession of instrument when loss occurred, loss of possession was not result of transfer or unlawful seizure, possession of the instrument could not reasonably be obtained, and the terms of instrument and the person's right to enforce the instrument were proven.

**MORTGAGES AND DEEDS OF TRUST – ASSIGNMENT OR OTHER TRANSFER OF MORTGAGE INTEREST – ENFORCEMENT, REMEDIES, AND PROCEEDINGS – LOST, STOLEN, OR DESTROYED INSTRUMENTS**

CL § 3-309, governing enforcement of lost, destroyed, or stolen instruments, does not preclude the enforcement of an assigned right to a lost note where the assignee is not the party that lost the note.

**MORTGAGES AND DEEDS OF TRUST – ASSIGNMENT OR OTHER TRANSFER OF MORTGAGE INTEREST – RIGHTS OF TRANSFEREE**

CL § 3-309 does not nullify mortgage assignee's right to enforce a promissory note that had been lost by the mortgage assignor; CL § 3-309 governing enforcement of lost notes was silent regarding rights of an assignee of a mortgage and transferee of a lost note, read as a whole, CL § 3-309 was intended to protect borrowers from competing claims while allowing lenders to enforce a note, official comments by the drafters of UCC § 3-309 indicate that the revision was intended to expand those entitled to enforce a debt instrument, Maryland statutory and common law support the transfer of mortgage instruments, and precluding the enforcement of an assigned right to a lost note would confer a windfall on debtors.

**MORTGAGES AND DEEDS OF TRUST – ASSIGNMENT OR OTHER TRANSFER OF MORTGAGE INTEREST – RIGHTS OF TRANSFEREE**

Assignee was entitled to enforce a note that been lost by the mortgage assignor where the terms of the note were uncontroverted, the assignor had the right to enforce the note under CL § 3-309 when it assigned the mortgage and transferred the note to assignee, each subsequent assignment was established, and the debtor was adequately protected against loss.

Circuit Court for Prince George's County
Case No. CAEF19-13256

REPORTED

IN THE COURT OF SPECIAL APPEALS

OF MARYLAND

No. 1071

September Term, 2020

_____

PHYLLIS M. JONES

v.

CARRIE M. WARD, ET AL.

_____

Reed,
Ripken,
Battaglia, Lynne A.
    (Senior Judge, Specially Assigned)

JJ.
_____

Opinion by Ripken, J.
_____

Filed: February 24, 2022

This appeal involves a challenge to the Circuit Court for Prince George's County's order denying Appellant Phyllis Jones's ("Jones") Motion to Stay and/or Dismiss Foreclosure Proceedings. Jones argues that the circuit court denied the motion in error because the trustees[1] who initiated the foreclosure proceeding, Appellees (collectively "Substitute Trustees"), did not have standing to bring the action. According to Jones, numerous defects in the chain of title called into question the foreclosing lender's right to enforce the note secured by her property. For the reasons discussed below, we shall affirm.

## FACTUAL AND PROCEDURAL BACKGROUND

On June 24, 2004, Jones obtained a loan from World Savings Bank, FSB ("World Savings Bank") for $360,000, which was executed by a Note and a Deed of Trust secured by her property at 17005 Longleaf Drive, Bowie, Maryland 20716 ("the Property"). In the Note, Jones agreed to pay $360,000 to World Savings Bank and "its successors and/or assignees, or anyone to whom the Note is transferred." World Savings Bank recorded the Deed of Trust. On August 31, 2004, an Assistant Custodian of Records for World Savings Bank signed a Lost Note Affidavit affirming that World Savings Bank was the lawful owner of the Note, the Note had not been "canceled, altered, assigned, endorsed, negotiated, or hypothecated," and the Note was lost. Despite this, Wells Fargo, N.A. ("Wells Fargo") came to own the Note through a series of acquisitions in which Wachovia acquired World Savings Bank, and Wells Fargo then acquired Wachovia.

---

[1] Those Substitute Trustees are Carrie M. Ward, Howard N. Bierman, Jacob Geesing, Pratima Lele, Joshua Coleman, Richard R. Goldsmith, Jr., Elizabeth C. Jones, Nicholas Derdock, Andrew J, Brenner, Angela M. Dawkins, Wayne Anthony Holman, Megh Milan Mittra, Michael Leeb, Christopher Robert Selig, and Philip Shriver.

On November 7, 2014, Jones entered into an agreement with Wells Fargo to modify the loan. The modification altered the payment terms. In July of 2016, Wells Fargo executed a Lost Note Affidavit stating that it was the owner of the Note, the Note had not been assigned or sold, and the Note had been lost. On September 8, 2016, Wells Fargo executed an additional Lost Note Affidavit in connection with a contemplated sale to PRMF Acquisition, stating that Wells Fargo "is the lawful owner of the Note" and it had not "sold, cancelled, altered, assigned or hypothecated the Note, except with respect to the sale of the Note and loan to PRMF Acquisition LLC ("Purchaser"), to which this Lost Note Affidavit relates." Then on May 31, 2017, Wells Fargo executed another Lost Note Affidavit stating that it "is the lawful owner of the Note," and affirming that the Note had been inadvertently lost, and had not been sold, altered, or assigned.

On August 22, 2017, Wells Fargo transferred its ownership of the Note to Truman 2016 SC6 Title Trust LLC ("Truman I") and transferred servicing rights to Rushmore Loan Management Services ("Rushmore"). An assignment of the Deed of Trust to Truman I was recorded in the County Land Records. In March of 2018, Truman I transferred its ownership in the Note to Truman 2016 SC6 MD ML, LLC ("Truman II"), of which the assignment was likewise recorded.

On November 21, 2018, Rushmore sent Jones a letter notifying her that Truman II was the new creditor that holds title to the loan, and that Rushmore was responsible for servicing the loan. Truman II, acting through Rushmore, appointed appellees as Substitute Trustees.

Earlier, in February of 2016, Jones defaulted on her mortgage payments due under the Note. A notice of intent to foreclose was sent to Jones in June of 2018 based on her continued default, and on April 18, 2019, Substitute Trustees initiated a foreclosure action by filing an Order to Docket in the Circuit Court for Prince George's County.[2] Included with the Order to Docket was a copy of an affidavit certifying that Truman II owned the Note and that the attached copy of the note was true and accurate. Jones filed a Motion to Stay and/or Dismiss Foreclosure Proceedings. According to Jones, dismissal was appropriate because the Substitute Trustees failed to demonstrate that Truman II was the owner of the Note, and therefore Substitute Trustees did not have standing to bring the action. The court signed an order on September 26, 2019, temporarily staying the foreclosure sale until after a decision had been rendered following a full evidentiary hearing on Jones's motion.

Prior to the hearing, on January 9, 2020, Rushmore, acting as the authorized loan servicer for Truman II, executed a Lost Note Affidavit stating that Truman II was the lawful owner of the Note and detailing the lengthy transfer history of the Note. In addition, the affidavit stated that "[Truman II] agrees to hold harmless and indemnify any party which has relied on this affidavit, should any claim be made against them by reason of claimed ownership of the Note[.]" The affidavit was signed by Enadia Pierce, the Assistant Vice President of Rushmore. The affidavit stated it was witnessed by the notary "on this day of

---

[2] According to the docket entries, the parties participated in mediation on August 19, 2019, but were ultimately unsuccessful in reaching an agreement.

1-9-2020 before me, a Notary Public in the State of Maryland, in and for the County of Montgomery[.]" The notarial seal was from the State of Texas.

On January 14, 2020, the court held the hearing on Jones's motion wherein it heard testimony and oral argument from each side. The parties stipulated to the following exhibits: a copy of the Note signed by Jones; a copy of the Deed of Trust; a copy of the Modification Loan Agreement with Wells Fargo; a letter dated August 3, 2017, informing Jones that Rushmore would begin servicing her loan and a letter dated September 5, 2017, summarizing Jones's debt; assignments of the deed of trust from Wells Fargo to Truman I and Truman I to Truman II; a copy of a letter dated August 25, 2018, titled "Notice of Sale of Ownership"; a document reflecting the payment history on the loan; and the prior lost note affidavits, with the exception of the January 9, 2020 lost note affidavit. Jones objected to the admission of that affidavit, arguing that it was facially invalid given the inconsistencies in the Maryland notary attestation and the Texas notarial seal.

In response, Substitute Trustees argued that the Texas notarial seal did not make the affidavit invalid, given that Pierce had signed the affidavit. Additionally, Substitute Trustees stated that Rushmore's assistant secretary and custodian of records, Roger Martin ("Martin"), was available to testify to the veracity of the affidavit's contents. Martin testified that the signatory on the affidavit, Ms. Pierce, worked in the Dallas office of Rushmore, but he did not know whether she was located in Maryland or Texas on January 9, 2020. Martin also testified that the January 9, 2020 affidavit came into his possession after it was sent directly to Rushmore. He further stated that, as custodian of records for Rushmore, he maintains records for loans that Rushmore services in the ordinary course of

4

business, and the January 9, 2020 affidavit was one of those records. Martin testified that he reviewed the documents described in the January 9, 2020 affidavit and verified the truth of the information contained in the January 9, 2020 affidavit. The court found Martin's testimony to be credible and it admitted the affidavit as a business record, along with the other exhibits.

Next, the circuit court heard argument on her motion, and Jones contended that the foreclosure action should be dismissed because Substitute Trustees lacked the requisite standing to foreclose. According to Jones, Substitute Trustees could not demonstrate that they were nonholders in possession of the Note because the Note was lost, the copy of the Note attached to the Order to Docket was unendorsed, and the documents provided by Substitute Trustees were insufficient to prove transfer history.[3] In particular, Jones argued that the September 8, 2016 lost note affidavit stated that the Note was transferred to PRMF Acquisition, Inc. In response, Substitute Trustees argued that they were not attempting to enforce the note as nonholders in possession but as parties entitled to enforce a lost note under Maryland Commercial Law Article ("CL") §3-309 (2013 Repl. Vol.). Substitute Trustees stressed that Jones did not contest that she was in default of her payments, nor did she suggest that another purported owner of the Note had contacted her seeking payment. They further argued that the documents amply proved the transfer history. The court took the matter under advisement.

---

[3] During the argument, Jones explained that World Savings Bank, the originator of the Note, was purchased by Wachovia Bank and that Wachovia Bank was purchased by Wells Fargo.

On February 12, 2020, the court issued an order denying Jones's motion. In its written opinion, the court reviewed the foreclosure history and stated that Jones obtained a loan from World Savings Bank in 2004, which the court referred to as "Loan I." The court treated Jones's later loan modification agreement with Wells Fargo as a "refinance," which the court referred to as "Loan II." In its analysis, the court found that Loan I (with World Savings Bank) was "undisputed," and that Wells Fargo "inherited the rights and interests previously obtained by World Savings Bank," through equitable subrogation. The court found that "when Wells Fargo lost the original Loan Modification Agreement," which the court treated as Loan II, Wells Fargo executed "several lost note affidavits in accordance with Maryland law." The court thereafter found that Loan II was "properly assigned from Wells Fargo to [Truman I] then to [Truman II]," Truman II retained ownership with Rushmore as its servicer, and the court accepted Rushmore's January 2020 lost note affidavit. The court concluded that Substitute Trustees, on behalf of Rushmore, were entitled to enforce the note. The court lifted the temporary stay on the property and allowed foreclosure proceedings to commence.

Jones filed a Motion for Reconsideration on February 19, 2020 and again argued that the Substitute Trustees lacked the requisite standing to bring the action and reiterated her arguments made before the circuit court. She also asserted that the court erred in finding that there were two loans on her property, and for the first time argued that there was no proof that Wells Fargo acquired World Savings Bank and therefore the Note owned by World Savings Bank. Substitute Trustees filed an opposition to Jones's motion. In response to her argument contesting Wells Fargo's ownership of the Note, substitute trustees stated

that it was public record that in 2007, World Savings Bank changed its name to Wachovia Mortgage, and in 2009, Wachovia Mortgage merged with Wells Fargo. They argued that because the Note listed World Savings Bank along with "its successors and/or assignees," and Wells Fargo was a successor to World Savings Bank, Wells Fargo obtained ownership of the Note.

The court denied Jones's motion on October 26, 2020. On November 22, 2020, Jones filed this interlocutory appeal.[4] Additional facts will be provided as they become relevant to the issues.

## ISSUES PRESENTED

On appeal, Jones presents three issues for our review:

I.  Did the Circuit Court err in classifying a loan modification as a refinance and referencing a new set of loan documents that did not exist?

II. Did the Circuit Court err in applying the Doctrine of Subrogation and Equitable Subrogation to determine that [Truman II] had the rights of a holder rather than applying Maryland Code, Commercial Law § 3-301?

III. Did the Circuit Court err in determining that a Texas notary has notarial power in the state of Maryland, in which the improperly notarized document on its face should be invalidated without further evidence or testimony to support it?

These three errors asserted by Jones can be distilled into a single question: whether the circuit court erred in denying the motion to dismiss for lack of standing? As we shall explain, we hold that Jones did not raise a valid factual or legal defense to the validity of the lien instrument or the right of substitute trustees to foreclose. Although it does appear that the circuit court erred in classifying the loan modification as a separate "refinanced"

_____

[4] In a separate appeal to this Court, No. 350, September Term 2021, Jones challenges the circuit court's later ratification of the foreclosure sale.

7

loan and in applying the doctrine of equitable subrogation, the record nonetheless demonstrates that the Substitute Trustees owned and were entitled to enforce the Note. As to Jones's three asserted bases of error, we address each in the context of whether the court erred in denying the motion to dismiss on that basis, beginning with Jones's contentions concerning CL § 3-301.

## STANDARD OF REVIEW

"The grant or denial of injunctive relief in a property foreclosure action lies generally within the sound discretion of the trial court." *Anderson v. Burson*, 424 Md. 232, 243 (2011). Therefore, we review the denial of such injunctive relief for an abuse of discretion. *Id.* Abuse of discretion occurs where the trial court's decision is "well removed from any center mark imagined by the reviewing court and beyond the fringe of what the court deems minimally acceptable." *Eastside Vend Distribs., Inc. v. Pepsi Bottling Grp., Inc.*, 396 Md. 219, 239 (2006). A ruling will be reversed for an abuse of discretion when that ruling "does not logically follow from the findings from which it supposedly rests or has no reasonable relationship to its announced objective." *Anderson*, 424 Md at 243.

"[E]ven with respect to a discretionary matter, a trial court must exercise its discretion in accordance with correct legal standards." *Ehrlich v. Perez*, 394 Md. 691, 708 (2006) (quoting *LeJeune v. Coin Acceptors, Inc.*, 381 Md. 288, 301 (2004)). The trial court's legal conclusions are reviewed without deference, subject to the *de novo* standard. *Anderson*, 424 Md. at 243. Factual findings are reviewed for clear error, and "we will not disturb the factual findings of the trial court if there is any competent evidence to support those factual findings." *Dickerson v. Longoria*, 414 Md. 419, 433 (2010) (alterations and

8

internal quotations omitted) (quoting *Goff v. State*, 387 Md 327, 338 (2005)). Nonetheless, we may affirm the court's decision on any ground adequately shown by the record. *Norman v. Borison*, 192 Md. App. 405, 419 (2010).

## DISCUSSION

Maryland Rule 14-211 governs motions to stay or dismiss a foreclosure action. Pursuant to this rule, an interested party may challenge a foreclosure sale by contesting either "the validity of the lien or the lien instrument or the right of the plaintiff to foreclose the pending action." Md. Rule 14-211(a)(3). Jones does not contest the validity of the lien or the lien instrument; rather, she centers her argument on Substitute Trustees' right to foreclose. According to Jones, the court erred by classifying the loan modification as a new and refinanced loan, applying the doctrine of subrogation, and accepting the January 9, 2020 affidavit. We understand Jones to argue that if we agree the circuit court committed error in any one of these respects, the circuit court's conclusion that the Substitute Trustees had the right to foreclosure is fatally flawed and its order should be reversed.

## I. ASSIGNEES MAY ENFORCE A LOST NOTE EVEN IF THE NOTE WAS LOST BEFORE IT WAS ASSIGNED.

Pursuant to CL § 3-301, persons entitled to enforce a note are "(i) the holder of the instrument, (ii) a nonholder in possession of the instrument who has the rights of a holder, or (iii) a person not in possession of the instrument who is entitled to enforce the instrument

9

pursuant to § 3-309[.]"[5] A person not in possession of the instrument, may only enforce a

note if they meet the criteria under § 3-309. Section 3-309(a) provides that:

> A person not in possession of an instrument is entitled to enforce the instrument if (i) the person was in possession of the instrument and entitled to enforce it when loss of possession occurred, (ii) the loss of possession was not the result of a transfer by the person or a lawful seizure, and (iii) the person cannot reasonably obtain possession of the instrument because the instrument was destroyed, its whereabouts cannot be determined, or it is in the wrongful possession of an unknown person[.]

Jones and Substitute Trustees agree that Substitute Trustees, as agents of Truman

II, are not in possession of the Note. Accordingly, the trustees could only enforce the Note,

if at all, under CL § 3-301(iii) by demonstrating they satisfy the requirements of

§ 3-309(a).[6] Jones argued, in the circuit court and before this Court, that the Substitute

Trustees failed to prove that Truman II was in possession of the Note and entitled to enforce

---

[5] A holder in this context is "the person in possession of a negotiable instrument that is payable either to bearer or to an identified person that is the person in possession." CL § 1-201(b)(21)(i).

[6] We note that the Substitute Trustees argue that Real Property Article ("RP") § 7-105.1(f) controls enforcement of lost notes. That section provides:
> Notwithstanding any other law, the court may not accept a lost note affidavit in lieu of a copy of the debt instrument under subsection (e)(2)(iii) of this section, unless the affidavit:
> (1) identifies the owner of the debt instrument and states from whom and the date on which the owner acquired ownership;
> (2) states why a copy of the debt instrument cannot be produced; and
> (3) Describes the good faith efforts made to produce a copy of the debt instrument.

RP § 7-105.1(f). This section applies to the sufficiency of a lost note affidavit in place of a debt instrument in filing the Order to Docket, not enforcement of a lost note.

it when loss occurred, as required by 3-309(a)(i). Specifically, Jones argues, the Note was deemed lost in 2004, when it was still owned by World Savings Bank.

We conclude that the Substitute Trustees presented evidence sufficient to satisfy CL § 3-309 and therefore CL § 3-301(iii). As we will explain, Substitute Trustees provided evidence that World Savings Bank had the right to enforce the Note under CL § 3-309, and that right was transferred through each subsequent assignment.[7] First, however, we explore the Uniform Commercial Code ("UCC") § 3-301, from which Maryland has adopted CL §§ 3-301 and 3-309. We examine the relevant legislative history of UCC § 3-309 as it has been interpreted in other jurisdictions facing this issue. Ultimately, based on our review of Maryland law, we conclude that an assignee may enforce a lost note under § 3-309 even if the note was lost prior to its assignment.

## A.    Enforcement of Lost Notes Pursuant to UCC § 3-309

The Uniform Law Commission revised UCC Article 3 in 1990 and, for reasons that we will explain, amended the 1990 version of § 3-309(a) in 2002. Maryland adopted the 1990 revision to Article 3 in 1996, and repealed and replaced the original UCC Article 3

---

[7] Maryland courts have not previously considered whether a lost note may be enforced under § 3-309 when the entity attempting enforcement did not possess the note when it was lost. Jones urges us to look to *Anderson v. Burson*, 424 Md. 232 (2011), as instructive, and Substitute Trustees posit that *Svrcek v. Rosenburg*, 203 Md. App. 705 (2012), is on point. Neither case addressed the precise issue. In *Anderson*, the entity seeking to enforce the note originally claimed that the note was lost, but later produced the note and was entitled to enforce it under § 3-301(ii) as a nonholder in possession. 424 Md. at 251–52. In *Svrcek*, the entity seeking to enforce the lost note was entitled to do so under § 3-309, and therefore § 3-301(iii), but that entity had been in possession of the note at the time it was lost. 203 Md. App. at 725–26.

11

that it first adopted in 1963. 1996 Md. Laws 1226, 12476; 1963 Md. Laws 786. The 1990

revision to Article 3 was adopted by all 50 states.

An issue concerning enforceability of lost instruments, first recognized in *Dennis*

*Joslin Co. v. Robinson Broadcasting Corp.*, 977 F.Supp. 491, 494 (D.D.C. 1997), arose

under the 1990 revision.[8] In *Dennis Joslin Co.*, an assignee sought to enforce a note that

had been lost while in the possession of the assignor and never recovered. *Id.* at 492. In

looking to the UCC commentaries to the 1990 revision and the prior version of § 3-309,

the court noted that "both provisions are intended to protect defendants from being

obligated to two persons or entities with conflicting claims—the original holder who lost

the instrument and a subsequent holder who innocently acquired the lost note." *Id.* An

additional comment on the 1990 revision read: "the rights stated [in the revised provision]

are those of a 'person entitled to enforce the instrument' at the time of the loss rather than

of an 'owner' as in [the former provision.]" *Id.* at 495 (first alteration in original).

Based on the commentary, the court reasoned that the drafters "may have intended

only to draw a distinction based on the enforcement rights of the person in possession at

the time the note was lost[,]" which would not bar a subsequent assignee from enforcing a

previously lost note if the party that lost the note was entitled to enforce it. *Id.* But, the

court held, the language of the statute "clearly state[d]" the person suing on a lost note is

entitled to enforce it only if that person was "in possession of the instrument when loss of

possession occurred." *Id.* (emphasis omitted). Although the court found there existed no

---

[8] Specifically, the court interpreted the District of Columbia's version of UCC § 3-309, which the District of Columbia adopted in 1995.

"logical reason to distinguish between a person who was in possession at the time of the loss and one who later comes into possession of the rights to the note," it nonetheless concluded that, pursuant to the plain language of the statute, the entity suing on the note was precluded from recovering because it did not have possession of the note at the time it was lost. *Id.*

In response to the *Joslin* decision, UCC § 3-309(a) was amended in 2002 to read:

(a) A person not in possession of an instrument is entitled to enforce the instrument if:
(1) the person seeking to enforce the instrument:
    (A) was entitled to enforce the instrument when loss of possession occurred; or
    (B) has directly or indirectly acquired ownership of the instrument from a person who was entitled to enforce the instrument when loss of possession occurred.

Comment 2 states: "Subsection (a) is intended to reject the result in *Dennis Joslin Co. v. Robinson Broadcasting Corp.*, 977 F. Supp. 491 (D.D.C. 1997). A transferee of a lost instrument need prove only that its transferor was entitled to enforce, not that the transferee was in possession at the time the instrument was lost." UCC § 3-309 cmt. 2 (2002).

A number of states adopted the 2002 amendment to UCC § 3-309.[9] States that retain the pre-2002 language, as Maryland does, have split in deciding whether an entity may enforce a note that was lost by a previous entity.

---

[9] The States that have adopted the 2002 amendment to UCC § 3-309, in its essence, include: Alabama, Arkansas, District of Columbia, Florida, Hawaii, Indiana, Iowa, Kansas, Kentucky, Michigan, Minnesota, Mississippi, Montana, North Dakota, Ohio, Oklahoma, South Carolina, Tennessee, and Texas. UCC § 3-309, ed. and rev. notes.

On one hand, some courts have held similarly to the court in *Joslin*.[10] In *SMS Financial XXV, LLC v. Corsetti*, the Supreme Court of Rhode Island held that plaintiff, SMS Financial, was not entitled to enforce a lost note because the note was lost while in the possession of the previous transferor. 186 A.3d 1060, 1066 (R.I. 2018). The court reasoned that because SMS Financial never had possession, it could not demonstrate it was entitled to enforce a lost note under Rhode Island's version of § 3-309. *Id.* In acknowledging the frustration that defendants in these scenarios are able to "escape liability," the court concluded that the remedy for such a matter "falls squarely within the purview of the Legislature[,]" but the Rhode Island Legislature had not amended the code. *Id.* at 1067.

Similarly, in *Seven Oaks Enterprises, L.P. v. Devito*, the Appellate Court of Connecticut held that "the only logical construction of the statutory language compels the conclusion that the only person who can enforce the note is the person in possession of the note when it was lost." 185 Conn. App. 534, 552 (2018). Because there was no evidence that the note was lost while in the possession of the entity seeking enforcement, the court

---

[10] Decisions following *Joslin's* restrictive interpretation of their states' counterpart to § 3-309 include: *In re Harborhouse of Gloucester*, LLC, 505 B.R. 365 (Bankr. D. Mass. 2014); *McKay v. Capital Resources Co.,* 327 Ark. 737 (1997); *Emerald Portfolio, LLC v. Outer Banks/Kinnakeet Associates, LLC*, 790 S.E.2d 721 (N.C. Ct. App. 2016); *U.S. Bank, N.A. v. Jones*, 71 N.E.3d 1233 (Ohio Ct. App. 2016). *See Seven Oaks Enters., L.P. v. Devito*, 185 Conn. App. 534, 550 (2018) (listing courts that have interpreted 3-309 in the same manner as *Joslin*). *McKay* and *Jones* were based on the states' versions of 3-309 which, at that time, still mirrored the 1990 revision. Arkansas and Ohio have since adopted the 2002 amendment. UCC § 3-309, ed. and rev. notes.

held that the entity could not enforce the note under Connecticut's version of § 3-309. *Id.* at 554.

On the other hand, many courts have declined to interpret the pre-2002 revision language as barring enforcement of a lost note by an assignee.[11] The Supreme Court of New Jersey recently came to that conclusion in *Investors Bank v. Torres*, 243 N.J. 25 (2020). That court read New Jersey's § 3-309 in conjunction with other New Jersey statutes discussing assignment of contractual rights. *Id.* at 38–40. The court recognized that the New Jersey legislature had consistently expressed a strong policy favoring such assignments, and in fact enacted a specific statute allowing assignment of mortgages. *Id.* at 40.

Turning to § 3-309, the Supreme Court of New Jersey reiterated that the comments from the drafters of the model UCC § 3-309 expressed concern that a debtor would be confronted by two parties: one who possessed the instrument when it was lost and seeks to enforce it, and one who somehow holds the original. *Id.* at 42–43. The drafters cautioned courts not to enter judgment without ensuring that the debtor would be protected against two claims. *Id.*

---

[11] Decisions rejecting the *Joslin* interpretation of § 3-309 include: *In re Caddo Parish-Villas South, Ltd.*, 250 F.3d 300 (5th Cir. 2001); *Atlantic National Trust, LLC v. McNamee*, 984 So.2d 375 (Alaska 2007); *National Loan Investors, L.P. v. Joymar Associates*, 767 So.2d 549 (Fla. Dist. Ct. App. 2000); *Beal Bank, SSB v. Caddo Parish-Villas South, Ltd*., 218 B.R. 851 (N.D. Tex. 1998); *YYY Corp. v. Gazda*, 145 N.H. 53 (2000); *Bobby D. Associates v. DiMarcantonio*, 751 A.2d 673 (Pa. Super. 2000); *JP Morgan Chase Bank, N.A. v. Stehrenberger*, 180 Wash.App. 1047 (2014). *See Devito*, 185 Conn. App. at 550 (listing courts that have declined to interpret 3-309 in the same manner as *Joslin*). Alabama, Florida, Minnesota, New Hampshire, and Texas have since adopted the 2002 amendment language. UCC § 3-309, ed. and rev. notes.

The court concluded that New Jersey's § 3-309 "govern[ed] the rights of a party that was 'entitled to enforce' a lost note . . . at the time that it was lost[,]" but was silent regarding the rights of an assignee or transferee of a lost note. *Id.* at 45. But, such silence did not indicate that the New Jersey legislature, when it adopted § 3-309, intended to displace other New Jersey statutes or common law favoring assignments. *Id.* Therefore, the court concluded, § 3-309 did not bar enforcement of a lost note that was transferred, so long as the original transferor could enforce the note and transferred that right. *Id.* at 45–46.

**B.**      **Maryland Commercial Code § 3-309 Does Not Bar Enforcement of Lost Notes that Were Lost in the Possession of a Prior Transferor.**

Turning back to Maryland's CL § 3-309, we apply the principles of statutory interpretation to "ascertain and effectuate the real and actual intent of the Legislature." *Gardner v. State*, 420 Md. 1, 8 (2011) (quoting *State v. Johnson*, 415 Md. 413, 421–22 (2010)). "We begin with an examination of the text of a statute within the context of the statutory scheme to which it belongs," remembering that "words that appear clear and unambiguous when viewed in isolation may become ambiguous when read as part of a larger statutory scheme." *Nationstar Mortgage LLC v. Kemp*, 476 Md. 149, 169 (2021) (citation and internal quotation marks omitted). "We also review the legislative history of the statute to confirm conclusions drawn from the text or to resolve ambiguities[,]" and we examine prior case law. *Id.* at 170. Last, we "consider the consequences of alternative interpretations to avoid constructions that are illogical or nonsensical[.]" *Id.* (internal

16

quotations omitted) (quoting *Couret-Rios v. Fire & Police Emps.' Ret. Sys.*, 468 Md. 508, 528 (2020)).

First, we begin with the text of CL § 3-309. As we discussed, that statute states in pertinent part that the person seeking to enforce an instrument they do not possess can do so if that person "was in possession of the instrument and entitled to enforce it when loss of possession occurred[.]" CL § 3-309(a). The statute limits the "*right*" of enforcement to persons who were entitled to enforce at the time the note became lost. Nothing in the language of § 3-309 expressly prohibits the assignment of lost notes or otherwise limits an assignee's rights. Section (b) states that the court "may not enter judgment in favor of the person seeking enforcement unless it finds that the person required to pay the instrument is adequately protected against loss that might occur by reason of a claim by another person to enforce the instrument." CL § 3-309(b). Read as a whole, § 3-309 protects a borrower from being subjected to multiple competing claims where a note is lost, but nonetheless allows a lender to enforce the lost note.

Second, we recognize that the official comments of the drafters of the UCC "are an excellent place to begin a search for the legislature's intent when it adopted the Code" but "are not controlling authority and may not be used to vary the plain language of the statute." *Messing v. Bank of America, N.A.*, 373 Md. 672, 685 (2003) (quoting *Jefferson v. Jones*, 286 Md. 544, 547 (1979). A comment to § 3-309 states that "[t]he rights stated are those of 'a person entitled to enforce the instrument' at the time of loss rather than those of an

17

'owner' as in former Section 3-804," thus expanding those who are entitled to enforce a lost instrument from the former section.[12]

In addition, Maryland common law has long permitted the assignment of mortgages. *See generally, Aldridge v. Weems*, 2 G. & J. 36, 37–39 (1829) (holding assignment of mortgage effective where mortgage instrument recovered among decedent's effects bore a handwritten note of assignment and signature in decedent's handwriting). Maryland Real Property Article § 2-103 (2015 Repl. Vol.) states that "[e]very valid assignment of a mortgage is sufficient to grant to the assignee every right which the assignor possessed under the mortgage at the time of the assignment." When a mortgage is assigned, an assignee has the same rights and responsibilities as the assignor. The Court of Appeals stated that "the rights of an assignee are concomitant to those of an assignor . . . An unqualified assignment generally operates to transfer to the assignee all of the right, title and interest of the assignor in the subject of the assignment[.]" *University Sys. of Md. v. Mooney,* 407 Md. 390, 411 (2009).

Finally, we note that if we were to construe CL § 3-309 as Jones suggests, the result would confer a windfall on debtors where a lost or destroyed note was purchased. *See Torres*, 243 N.J. at 46–47 ("[S]uch an interpretation would produce an absurd result—

---

[12] UCC § 3-804 provided:

> The owner of an instrument which is lost, whether by destruction, theft or otherwise, may maintain an action in his own name and recover from any party liable thereon upon due proof of his ownership, the facts which prevent his production of the instrument and its terms. The court may require security indemnifying the defendant against loss by reason of further claims on the instrument.

allowing the defaulted defendant to remain in possession of a house obligation-free.")
(internal quotation marks omitted); *B. F. Saul Co. v. W. End Park N., Inc.*, 250 Md. 707,
722 (1968) (affirming the lower court's "practical and sensible" construction of a statute
based on the "cardinal rule[] of statutory construction [] that wherever possible an
interpretation should be given to the statutory language which will not lead to oppressive,
absurd or unjust consequences.").

We decline to interpret § 3-309 as restrictively as Jones requests. Rather, we hold
that, based on the language of § 3-309, Maryland statutes, and Maryland common law in
favor of assignment, an entity that lost a note in its possession may assign that lost note,
and all the rights under it, including the right to enforcement. We see no affirmative
indication in the text or history of CL § 3-309 that the General Assembly intended to follow
the result in *Joslin*. We also note that the Legislature's silence regarding the 2002
amendments to Article 3 does not lead to an inference that it approved of the result in
*Joslin*. *See U.S. v. Craft*, 535 U.S. 274, 287 (2002) ("[C]ongressional inaction lacks
persuasive significance because several equally tenable inferences may be drawn from such
inaction, including the inference that the existing legislation already incorporated the
offered change.").

Accordingly, the Substitute Trustees had to demonstrate World Savings Bank was
entitled to enforce the note when it lost possession and that it validly assigned the right to
enforcement when it assigned the Note, and there was a valid assignment to each
subsequent purchaser from the prior owner. And, pursuant to § 3-309(b), the Substitute

19

Trustees had to demonstrate that Jones is adequately protected against loss that might occur by reason of a claim by another person to enforce the instrument

## II. THE CIRCUIT COURT DID NOT ABUSE ITS DISCRETION BECAUSE JONES DID NOT RAISE A VALID FACTUAL OR LEGAL DEFENSE TO THE VALIDITY OF THE LIEN INSTRUMENT OR THE RIGHT OF SUBSTITUTE TRUSTEES TO FORECLOSE.

Jones contends that the circuit court erred in concluding that the Substitute Trustees, on behalf of Truman II, were entitled to enforce the Note because they failed to adequately prove the chain of title. According to Jones, there were numerous breaks in the chain of title that call into question Truman II's ownership of the Note. Jones first takes issue with the court's classification of the loan modification as a refinancing. In her argument, Jones stresses that the crucial difference between a loan modification and refinance is that the latter creates a new transaction with a new note, whereas the former retains the original note. Jones argues that the circuit court's misclassification of the loan was error because in creating a new loan, the court analyzed the chain of title that began with Wells Fargo, as opposed to one originating with World Savings Bank. As she argued in her motion for reconsideration, Jones asserts this error was dispositive because there was insufficient evidence to demonstrate that Wells Fargo received ownership of the Note from World Savings Bank. Second, Jones argues that the September 8, 2016 Lost Note Affidavit demonstrates that Wells Fargo transferred the Note to PRMF, so any subsequent transfer by Wells Fargo to Truman II was invalid.

Maryland Rule 14-207(b)(3) requires a mortgagee to produce a copy of the note. *Anderson*, 424 Md. at 246; Md. Rule 14-207(b)(3). "Thereafter, the Maryland Commercial

Law Article takes over[.]" *Id.* at 245.[13] A party seeking to enforce a note must produce proof of its right "when the matter is put at issue properly." *Id.* at 246. A party who is not in possession of the debt instrument may only enforce the instrument under CL § 3-301(iii).

In *Svrcek v. Rosenberg*, this Court addressed whether substitute trustees were entitled to enforce a lost note under § 3-309 on behalf of Citibank despite a claim of inadequate transfer history. 203 Md. App. 705, 709 (2012). After Svrcek defaulted on mortgage payments, the substitute trustees initiated foreclosure proceedings. *Id.* at 710–11. Svrcek filed a motion to stay the foreclosure action, arguing that there were defects in the chain of title—including defects arising from the copy of the unendorsed note attached to the order to docket—which, in combination with the lost note, rendered the substitute trustees unable prove that they were entitled to enforce the note. *Id.* at 716. The circuit court denied Svrcek's motion as untimely but nonetheless determined that Citibank had the right to foreclose. Svrcek appealed to this Court. *Id.* at 718–19.

We held that the substitute trustees produced sufficient evidence to demonstrate that Citibank was entitled to enforce the note. *Id.* at 724, 726. Because the note was lost, the substitute trustees would have had to prove their right to enforce under 3-301(iii), which required them to prove entitlement under 3-309. *Id.* at 724. To restate, the full language of 3-309 provides:

> (a) A person not in possession of an instrument is entitled to enforce the instrument if (i) the person was in possession of the instrument and entitled

---

[13] The Maryland Commercial Code governs negotiable promissory notes secured by a deed of trust. *Anderson*, 424 Md. at 246. "The deed of trust cannot be transferred like a mortgage; rather, the corresponding note may be transferred, and carries with it the security provided by the deed of trust." *Id.*

21

to enforce it when the loss of possession occurred (ii) the loss of possession was not the result of a transfer by the person or a lawful seizure, and (iii) the person cannot reasonably obtain possession of the instrument because the instrument was destroyed, its whereabouts cannot be determined, or it is in the wrongful possession of an unknown person or a person that cannot be found or is not amenable to service of process.

(b) A person seeking enforcement of an instrument under subsection (a) must prove the terms of the instrument and the person's right to enforce the instrument. If that proof is made, § 3-308 applies to the case as if the person seeking enforcement had produced the instrument. The court may not enter judgment in favor of the person seeking enforcement unless it finds that the person required to pay the instrument is adequately protected against loss that might occur by reason of a claim by another person to enforce the instrument, Adequate protection may be provided by any reasonable means.

CL § 3-309.

We concluded that the evidence before the circuit court established that the substitute trustees were entitled to foreclose on behalf of Citibank. *Svreck*, 203 Md. App. at 724. The order to docket contained a certified true copy of the note, an affidavit of ownership, and a certification that the note was a true and accurate copy of the original. *Id.* at 725. In addition, Svrcek never denied that the note was an accurate copy of the original note, never alleged any party other than the lender had contacted him regarding payments, and in fact made payments for three years to the servicer. *Id.* We concluded that the evidence supported the trial court's conclusion that the note was transferred to Citibank,[14] Citibank lost the note, and Citibank was entitled to enforce the note at the time it was lost. *Id.* at 726. Noting that Svrcek was "clearly in default on his contractual obligations," we

[14] Although the copy of the note attached to the order to docket was unendorsed, other evidence demonstrated the note was transferred from the original lender to Citibank, including a "pooling and servicing agreement" bearing a certain date, which Svreck did not attempt to controvert. *Id.* at 726.

22

held the circuit court did not err in denying his motion to stay the sale and dismiss foreclosure proceedings. *Id.*

Returning to the instant case, we conclude that the circuit court had sufficient evidence to find that the Substitute Trustees had the right to enforce the lost note on behalf of Truman II under § 3-309. First, World Savings Bank was entitled to enforce the Note when it was lost. Shortly after Jones issued the Note to World Savings Bank, World Savings Bank executed a Lost Note Affidavit affirming that it was the lawful owner of the Note, and the Note had been inadvertently lost. Jones does not contest the validity of that document. We hold that there was sufficient evidence for the circuit court to find that World Savings Bank was in possession of the Note, was entitled to enforce it when the loss occurred, and therefore was a nonholder not in possession entitled to enforce the lost note under 3-301(iii).

Next, we consider whether Substitute Trustees produced sufficient evidence of the transfer history to demonstrate that World Savings Bank's right to enforce the lost Note was transferred to Truman II. At the hearing on the motion to dismiss, Jones explained the progression from World Savings Bank to Wells Fargo as follows: "[N]owhere in the record has the substitute trustee [] shown that it has chain of title from World Savings Bank in 2004, who was the original entity that lost the note. Now, from there, Wachovia Bank did purchase World Savings Bank and from there Wells Fargo did purchase Wachovia." The documents admitted by stipulation support this version of events. The assignment of the deed of trust from Wells Fargo to Truman I identified Wells Fargo, the Assignor, as "Wells Fargo Bank, N.A., s/b/m to Wells Fargo Bank Southwest, N.A., f/k/a Wachovia Mortgage,

23

FSB, f/k/a World Savings Bank, FSB."[15] All the evidence indicates that Wells Fargo was a successor to World Savings Bank through a series of acquisitions and mergers.[16]

This link in the chain was supported by other documents, including the loan modification agreement dated November 28, 2014, between "Phyllis M. Jones ('Borrower') and Wells Fargo Bank N.A. ('Lender')." The agreement stated that it:

> [A]mend[ed] and supplement[ed] (1) the Mortgage, Deed of Trust, or Security Deed (the "Security Instrument") dated June 25, 2004 and (2) the adjustable rate/fixed rate note (the "Note"), bearing the same date as, and secured by, the Security Instrument, which covers the property described in the Security Instrument, and defined therein, as the "Property," located at: 17005 Longleaf Drive, Bowie, MD 20716.

The loan modification expressly reserved to Wells Fargo, as the lender, the rights and remedies on the Note and Security Instrument. It was signed by Jones and Wells Fargo. Jones made payments following the modification until her default in 2016. The execution and performance under the loan modification is strong evidence that Wells Fargo was the secured party as of November 2014. *See Anderson*, 424 Md. at 251 n.22 (reasoning that Anderson "conceded the debt [] by listing [the loan servicer] as a secured creditor;

---

[15] The abbreviation "f/k/a," commonly used in legal matters, stands for "formerly known as"; the abbreviation "s/b/m" stands for "successor by merger."

[16] Jones argued in her motion for reconsideration that no evidence had been admitted to support that Wells Fargo was a successor in interest to World Savings Bank or that it was ever a secured party, rather than a servicer. The Substitute Trustees responded Wells Fargo's status as a successor in interest to World Savings Bank is reflected in various public records, including the website of the FDIC and an unreported opinion of the U.S. District Court for Maryland, which itself refers back to an unreported decision of this Court. Based on the other evidence, described below, the circuit court did not need to look outside the record to conclude that Wells Fargo was a secured party.

renegotiating his mortgage payments during his Chapter 13 Bankruptcy; and paying, without protest, mortgage payments to [the servicer].").  In addition, lost note affidavits from July 2016, September 2016, and May 2017 asserted that Wells Fargo was the current payee and lawful owner of the Note.

Jones alleges that Wells Fargo had transferred the Note to PRMF Acquisition in 2016, thereby breaking the chain of title and rendering Wells Fargo's later transfer to Truman I invalid. However, the September 8, 2016 affidavit cited by Jones as evidence that Wells Fargo transferred its interest to PRMF stated that Wells Fargo "is" the lawful owner of the Note, indicating it was still the owner of the Note at the time of execution of that document. Wells Fargo's continued ownership was further demonstrated by the May 31, 2017 affidavit affirming that Wells Fargo again "is" the owner of the Note, and had not sold the Note. And Jones does not claim that PRMF ever contacted her regarding payments on the loan.

The record contained a corporate assignment of deed of trust whereby in 2017 Wells Fargo transferred its ownership of the Note to Truman I and transferred servicing rights to Rushmore. The assignment of the Deed of Trust was subsequently recorded in the County Land Records. The record also contained an assignment of mortgage/deed of trust between Truman I and Truman II, and Truman II filed a certificate of ownership in the Order to Docket. Finally, we note that the January 9, 2020 affidavit, executed by Rushmore as the loan servicer for Truman II, detailed the Note's history and stated that Truman II "has not conveyed, assigned, pledged, hypothecated, encumbered, or otherwise transferred the Note

25

or any of its interest therein to anyone, and said Note is free and clear of all claims and encumbrances[.]" The circuit court accepted that affidavit into the record.

Based on the record before the court, we conclude that Wells Fargo was the holder of the Note when it transferred its interest to Truman I, which in turn transferred its interest to Truman II, and therefore Substitute Trustees satisfied the requirements of § 3-309(a). In addition, the January 9, 2020 affidavit, and Martin's testimony thereto, were sufficient to meet the requirements of § 3-309(b) that Jones be adequately protected in the event that another entity attempted to enforce the Note. The affidavit stated that Truman II would indemnify Jones in event of an attempted enforcement. The court's conclusion that there was sufficient evidence to demonstrate the chain of title enabling Substitute Trustees to enforce the Note was not erroneous. Though Jones claims that the court's classification of the loan modification as a refinanced loan was erroneous, we fail to see how the misclassification is material to Wells Fargo's ownership, and the subsequent transfer history of the Note. *See Anderson*, 424 Md. at 244 (declining to order a remand for new proceedings where the petitioner would not prevail on the facts in the record).[17]

---

[17] Jones asserts that the circuit court erred in concluding that Wells Fargo became the secured party under the deed of trust through the doctrine of equitable subrogation. Although this conclusion was seemingly erroneous, it is immaterial to the issue of standing. As explained above, the relevant inquiry is in the transfer and assignment of the Note, which the deed of trust follows. *See Svreck*, 203 Md. App. at 727 ("Maryland law makes clear that once the note was transferred, the right to enforce the deed of trust followed.")

## III. THE COURT DID NOT ERR IN ADMITTING THE LOST NOTE AFFIDAVIT.

Jones's final issue is with the court's acceptance of the January 9, 2020 lost note affidavit. She avers that the affidavit is inadmissible because: 1) the fact that the affidavit stated it was sworn to in the State of Maryland by Enadia Pierce but was sealed by a notarial seal in the State of Texas called into question the credibility of the affidavit; 2) the affidavit states that Enadia Pierce is signing on behalf of Rushmore Loan Management Services on one page, and Rushmore Loan Services on another page, which according to Jones are two different entities; and 3) a Texas notary does not have the same powers as a Maryland notary. [18] At the core of Jones's claim of error is that the affidavit was not reliable.

Rule 14-207(b)(3) requires that a copy of the debt instrument filed in the order to docket be "supported by an affidavit [stating] that it is a true and accurate copy and certifying ownership of the debt instrument." The January 9, 2020 affidavit satisfied both requirements of Rule 14-207(b)(3).

The irregularity between the Texas seal and Maryland attestation was brought before the trial court at the evidentiary hearing. The court took testimony from Martin, the custodian of records for Rushmore, who stated that the records identified in the January 9, 2020 affidavit were records kept in the ordinary course of Rushmore's business and explained Pierce's role. Martin further reviewed each of the documents identified by the

---

[18] Although Jones's claim as to the inconsistent entity names was not raised in the evidentiary hearing, this claim is nonetheless preserved because it was timely raised in the motion for reconsideration. *See* Md. Rule 8-131 ("Ordinarily, the appellate court will not decide any other issue unless it plainly appears by the record to have been raised in or decided by the trial court[.]").

affidavit and affirmed that the information contained in the affidavit was true and accurate. The court stated in its opinion that it found Martin's testimony to be credible and accepted the January 9, 2020 affidavit. The testimony similarly assuaged any doubts arising from the inconsistency in the entity names associated with Pierce. The circuit court did not err in accepting the affidavit.[19]

> **JUDGMENTS OF THE CIRCUIT COURT FOR PRINCE GEORGE'S COUNTY AFFIRMED. COSTS TO BE PAID BY APPELLANT.**

---

[19] We also note that Jones does not raise any issue on appeal as to the court's admission of the affidavit as a business record.